OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of April Brant, filed November 17, 2005. Brant appeals the trial court's grant of summary judgment in favor of Appellee Meijer Inc. (Meijer). The events giving rise to this matter began on June 13, 2002, when Brant slipped and fell in a puddle of water inside the Meijer store located on Harshman Road in Dayton, Ohio. Brant was at the store with her fiancÉ, brother and infant son to purchase batteries and car accessories. Unable to find what they were looking for in the automotive department, they turned around and walked back up the main aisle they had just walked down, heading toward the front of the store. Brant's brother pushed a cart with Brant's son in it directly behind Brant and her fiancÉ. Brant fell near the floral department, and her brother advised a nearby employee that Brant had fallen. Brant's brother told this employee to clean up the water. The employee walked away without speaking, however, and Brant chose to leave the store. She was later diagnosed with a bruised tailbone.
 {¶ 2} On February 26, 2004, Brant filed a Complaint, asserting a claim of negligence against Meijer. In granting Meijer's Motion for Summary Judgment, the trial court determined that "reasonable minds could only conclude that the puddle of water was neither latent nor hidden from view nor nondiscoverable by ordinary inspection. Even if the puddle was not open and obvious, Plaintiff presented no evidence that Defendant or one of its employees was responsible for creating the puddle of water or had actual or constructive knowledge of it."
 {¶ 3} Brant asserts one assignment of error as follows:
 {¶ 4} "THE TRIAL COURT ABUSED ITS DISCRETION BY SUSTAINING APPELLEE'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 5} "Our review of the trial court's decision to grant summary judgment is de novo. (Internal citations omitted). Civ. R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material facts (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. (Internal citations omitted). The moving party 'bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims.' (Internal citations omitted). If the moving party satisfies its initial burden, 'the nonmoving party then has a reciprocal burden * * * to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.'" Shirdon v. Houston, Montgomery App. No. 21529, 2006-Ohio-4521.
 {¶ 6} It is undisputed that Brant was a business invitee of Meijer's. "'Business invitees are persons who enter the premises of another for a purpose that is beneficial to the owner.' (Citation omitted). 'Store owners owe invitees 'a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger.'" Johnston v.Miamisburg Animal Hosp. (Aug. 31, 2001) Montgomery App. No. 18863, 2001-Ohio-1467.
 {¶ 7} "An inference of negligence does not arise from mere guess, speculation, or wishful thinking, but rather can arise only upon proof of some fact from which such inference can reasonably be drawn." Id. "To prevail in a case where the plaintiff has allegedly slipped on a foreign substance on the floor of the defendant's premises, the plaintiff bears the burden of showing: 1. That the defendant through its officers or employees was responsible for the hazard complained of; or 2. That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or 3. That such danger had existed for a sufficient length of time reasonable to justify the inference that the failure to warn against it or to remove it was attributable to a want of ordinary care." Jones v.Sears, Roebuck Co. (Oct. 19, 1994), Montgomery App. No. 14528.
 {¶ 8} "'In Armstrong v. Best Buy Co., Inc., 99 Ohio St.3d 79,2003-Ohio-2573, 788 N.E.2d 1088, the Ohio Supreme Court reaffirmed the viability of the open and obvious doctrine as an absolute defense to liability. The court noted that: 'in order to establish a cause of action for negligence, the plaintiff must show (1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately resulting therefrom.' (Internal citations omitted). In applying this standard, the court stressed that 'where a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises.' (Internal citations omitted). Scholz v. Revco Discount Drug Center, Inc., Montgomery App. No. 20825, 2005-Ohio-5916. 'The rationale is that an 'open and obvious' danger serves as its own warning. 'Open and obvious' dangers are neither hidden, concealed from view, nor nondiscoverable upon ordinary inspection. (Internal citations omitted). More importantly, the dangerous condition at issue does not actually have to be observed by the plaintiff in order for it to be an 'open and obvious' condition under the law. Rather, the determinative issue is whether the condition is observable. Even in cases in which the plaintiff did not actually notice the condition until after he or she fell, [courts] have found no duty to exist in cases where the plaintiff could have seen the condition if he or she had looked.'" (Internal citations omitted).Springer v. University of Dayton, Montgomery App. No. 21358,2006-Ohio-3198.
 {¶ 9} "When courts apply the rule, they must focus on the fact that the doctrine relates to the threshold issue of duty. By focusing on the duty prong of negligence, the rule properly considers the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it. The fact that a plaintiff was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability. Rather, it is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." Cramer v. McCray, Montgomery App. No. 20791, 2005-Ohio-5507.
 {¶ 10} Only if the record reveals no genuine issue of material fact as to whether the condition constitutes an open and obvious danger is it appropriate for the trial court to resolve the issue as a matter of law.Henry v. Dollar General Store, Greene App. No. 2002-CA-47, 2003-Ohio-206 (reversing grant of summary judgment in favor of defendant store and holding that a genuine issue of material fact existed as to whether a cement block used to prop open a door, over which plaintiff tripped, was an open and obvious hazard). Having thoroughly reviewed the record, we agree with the trial court that the puddle which caused Brant's fall was an open and obvious danger, relieving Meijer of any duty to warn Brant of its existence. In her deposition, Brant testified as follows regarding the puddle:
 {¶ 11} "Q. Now, when you slipped, had you looked at the floor before you fell?
 {¶ 12} "A. No, ma'am.
 {¶ 13} "Q. When you were on the ground, did you look at the floor to see what you slipped on?
 {¶ 14} "A. Yes.
 {¶ 15} "Q. And what did you see?
 {¶ 16} "A. I just saw a clear liquid that seemed to be water.
 {¶ 17} "Q. And how big of an area was this?
 {¶ 18} "A. After I fell, it was around me. I don't know how much there was before I had fallen. But after I had fallen, water was all over the floor after I had fallen. So I really don't recall exactly how much was on the floor.
 {¶ 19} "Q. When you say it was all over the floor and it was around me, are you talking like a three foot diameter area that you're now in the middle of?
 {¶ 20} "A. No. It was more — maybe a foot.
 {¶ 21} "Q. Okay. Of a diameter?
 {¶ 22} "A. Because after I had fallen, it splashed.
 {¶ 23} * * *
 {¶ 24} "Q. After Matt helped you up, did you look down at it?
 {¶ 25} "A. Yes, ma'am.
 {¶ 26} "Q. And what did you see?
 {¶ 27} "A. Just a puddle of water on the floor.
 {¶ 28} * * *
 {¶ 29} "Q. Did you have any problem seeing it when you looked down at it?
 {¶ 30} "A. No ma'am."
 {¶ 31} Brant's testimony makes clear that she would have been able to discover and avoid the puddle if she had exercised ordinary care in watching where she was going. Brant testified that her view of the floor was not obstructed. Her testimony that she saw the puddle after her fall establishes that it was visible to an ordinary observer looking directly where she was walking. By looking elsewhere, Brant "abandoned the duty imposed to look." Backus v. Giant Eagle (1996), 115 Ohio App.3d 155. Had she not done so, she would have seen the puddle.
 {¶ 32} Even if the puddle were not an open and obvious condition, there was no evidence before the trial court that Meijer or its employees were responsible for the puddle's existence. While a refrigerator was in use in the floral department a couple of feet away from the puddle, Brant testified that there was no indication of water flowing from the refrigerator to the puddle. The trial court correctly found that the "conclusion that the refrigerator was faulty and caused a puddle of water to form on the floor is pure speculation. There is no direct or circumstantial evidence to suggest that this, in fact, occurred."
 {¶ 33} Brant did not know how long the puddle had been there, and she testified that she did not observe it when she initially walked to the rear of the store. She also testified that there were no facts establishing that Meijer or its employees knew of the puddle. While a Meijer employee stood 10-15 feet away from the puddle at the time of Brant's fall, the trial court rejected Brant's argument that "knowledge of the water can be inferred due to the employee's close proximity and ambivalent attitude toward [Brant] and the puddle after [Brant's] fall." Construing the evidence most strongly in favor of Brant, we agree that an unconcerned employee's presence several feet away does not support an inference that the employee was aware of the water on the floor.
 {¶ 34} Henry, supra, upon which Brant relies, is distinguishable from the matter herein. In Henry, the plaintiff "entered the Dollar General store, turned left around a corner, and exited through a different door. She encountered the cement block only two or three steps after turning the corner. In addition, a trash can full of mops and brooms had been placed next to the exit door, opposite the cement block, and the mops and brooms were 'sticking out' and partially blocking the doorway. * * * Henry may have been distracted by an eye-level merchandise display as she exited the store." As discussed above, Brant returned along the main aisle that goes from the front to the back of the store that she previously traversed. Her view was unobstructed, and there was no evidence before the trial court that her attention may have been diverted before her fall by any attendant circumstances.
 {¶ 35} There being no genuine issue of material fact in the record as to whether the puddle constituted an open and obvious danger, Brant's assignment of error is overruled, and the judgment of the trial court sustaining Meijer's motion for summary judgment is affirmed.