[Cite as *Colville v. Meijer Stores Ltd.*, 2012-Ohio-2413.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI   COUNTY

SHARON COLVILLE                           :
                                          :        Appellate Case No.    2011-CA-011
            Plaintiff-Appellant           :
                                          :        Trial Court Case No.   10-204
v.                                        :
                                          :
MEIJER STORES LIMITED                     :        (Civil Appeal from
PARTNERSHIP, et al.                       :         Common Pleas Court)
                                          :
            Defendant-Appellees           :
                                          :
                        · · · · · · · · · · ·

## O P I N I O N

Rendered on the 1st day of June, 2012.

· · · · · · · · ·

JEFFREY G. CHINAULT, Atty. Reg. #0076723, Dyer, Garofalo, Mann & Schultz, 131 N. Ludlow Street, Suite 1400, Dayton, Ohio   45402
            Attorney for Plaintiff-Appellant, Sharon Colville

ERIN B. MOORE, Atty. Reg. #0061638, and JARED WAGNER, Atty. Reg. #0076674, Green & Green, Lawyers, 800 Performance Place, 109 N. Main Street, Dayton, Ohio 45402
            Attorneys for Defendant-Appellee, Meijer Stores

STEVEN F. STOFEL, Atty Reg. #0073332, and BRIAN R. McHENRY, Atty. Reg. #0065876, 130 West Second Street, Suite 1850, Dayton, Ohkiio 45402
            Attorney for Defendant-Appellee, Home City Ice Company

. . . . . . . . .

HALL, J.

{¶ 1}     This is an appeal from a final order granting both Defendants' respective motions for summary judgment in Plaintiff's action claiming damages for personal injuries she suffered in a slip-and-fall accident.

{¶ 2}     The action was commenced by Sharon Colville against Meijer Stores Limited Partnership ("Meijer") and The Home City Ice Company ("Home City Ice").   The complaint alleged that Colville was injured as a proximate result of her slip and fall in a Meijer store that proximately resulted from a hazardous condition that Meijer and Home City Ice negligently permitted to exist.

{¶ 3}     Meijer and Home City Ice each filed a responsive pleading denying the allegations of negligence and claims of liability.   Thereafter, depositions were taken of the plaintiff, Sharon Colville, and two other witnesses, Claudia J. Bates and Ian Unger.

{¶ 4}     Colville testified that on the morning of June 29, 2008, she drove to the Meijer store in Troy, Ohio, to purchase groceries and pay her credit-card bill.   When she drove her car into the store parking lot, Colville "noticed a white panel truck in the parking lot in front of the east door * * * unloading ice."   (T. 20).   Colville parked her car near the east entrance and entered Meijer around 11:50 a.m.

{¶ 5}     Colville paid her credit-card bill at the service desk and then walked through the women's clothing department, just to look.   She then "walked to the grocery section and got * * * peaches, sunflower seeds, and a kind of berry juice and some Diet Coke and check[ed] out of the self-service lane."   (T. 21).   The self-service lanes are near the store's west entrance.   Colville then made her way toward the east entrance, where she had entered,

pushing a grocery cart containing her purchases. The aisle she followed runs the width of the store, between the store's front windows and the check-out lanes.

{¶ 6} Colville testified that she did not notice anything unusual. (T. 25). She said that she saw people in the check-out lanes and "was walking toward the door watching to make sure no one came out and got in my way." (T. 26). Colville said she was focused on the door she was approaching: she "had the cart in front of [her]" and "wasn't looking at the ground." (T. 27). As she neared the east-exit door, Colville testified, "[w]hen I got in front of the ice machine, [I] slipped in something, went down hard on my right knee, all my weight, hanging onto my cart when I did it." (T. 21). Colville said she immediately experienced "intense pain" in her right knee. (T. 29).

{¶ 7} Colville testified that she got up and sat on some nearby boxes. When she stood up from the boxes and looked where she had fallen, Colville "could see that there was water" on the floor. (T. 27-28). When asked whether she was able to determine that water was on the floor, Colville testified: "Well, yeah, after I looked." (T. 28). Colville said she did not see the water as she approached the location. When asked whether anything had distracted her before she fell, Colville answered, "No." (T. 33). She testified that the only reason she did not see the puddle was because her attention was focused on the door in front of her. (T. 71).

{¶ 8} Colville testified that the water was "[r]ight beside the ice machine. Maybe two feet from it." (T. 26). She described the water as being in puddles extending "the length of the ice machine and two or three inches wide all along there." (T. 30). She testified that the puddles were about three-feet long and extended out more than three inches

from the ice machine. Colville did not see that the water came from the ice machine, and couldn't determine where it came from. (T. 31). And she had no idea how long the puddle was there before her fall. (T. 34). Colville said that initially she was not aware of the name of the ice company because "there was no Home City Ice on the truck," but she said, "I've learned since then * * * because Meijer told me." (T. 34-35). Colville further testified: "I knew that they were delivering ice, and I surmised from there as they loaded the bags, the water dripped from the bags." (T. 34-35). She was unable to tell who created the puddle, (T. 35), and she did not know if Home City Ice was aware that there was a puddle on the floor. (T. 73).

{¶ 9} When a store employee approached her, Colville told him about the water on the floor. Colville said that the employee saw the water when she pointed it out. The employee then mopped it up. Colville declined ambulance assistance and drove home. She consulted her physician the following day, and he diagnosed a chipped patella and referred Colville to an orthopedic surgeon. An MRI revealed a torn meniscus in Colville's right knee, and she underwent outpatient surgery to repair it. Colville continues to experience knee and hip pain that she attributes to her fall.

{¶ 10} Claudia J. Bates, who was a service-team leader at Meijer on the day Colville fell, was also deposed. Bates could recall only speaking with a woman who had slipped and fallen. Bates subsequently left Meijer's employ.

{¶ 11} Ian Unger, who worked for Home City Ice and delivered ice to Meijer stores in July 2008, was deposed too. When asked what his job involved, Unger replied, "fill up the ice box, then you clean up all your messes." (T. 9). The "messes" could include water on

the floor "right in front of the icebox if some ice fell out." *Id.* A towel was attached by a rope to each icebox for that purpose. However, Unger "rarely" found water on the floor around an icebox. (T. 10).

**{¶ 12}** Unger testified that Home City Ice had a contract with Meijer "to fill their icebox completely full and bill them." (T. 14). Delivery persons would inspect the iceboxes they filled to make sure they were working properly. This included checking for water "at all times." (T. 15). They were to clean up any water but were to call Home City Ice maintenance if there were any other problems.

**{¶ 13}** Unger testified that, in his experience, water didn't drip from ice bags when they were loaded into an icebox because the ice was solidly frozen. He said that the time it took to transport the bags from the delivery truck to the icebox was too short to permit any melting. After watching a video at the offices of counsel for Home City Ice, which may have depicted Unger delivering ice to the Troy Meijer store on the day Colville slipped and fell, Unger testified that he saw no water on the floor that day.[1]

**{¶ 14}** Defendants each filed a motion for summary judgment. Meijer argued that it cannot be held liable to Colville for her injuries and losses proximately resulting from her fall on its premises because the puddle of water on which she allegedly slipped was an open-and-obvious condition as a matter of law. Meijer relied on the Ohio Supreme Court's holding in *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, and the holding of this Court in *Brant v. Meijer, Inc.*, 2d Dist. Montgomery No. 21369, 2006-Ohio-6300. (Dkt. 25).

---

[1] The video is not a part of the record of this proceeding.

**{¶ 15}** In her opposition to Meijer's summary-judgment motion, Colville relied on her own deposition testimony, arguing that the "attendant circumstances" exception to the open-and-obvious-condition rule applied. Relying on *Godwin v. Erb*, 167 Ohio St.3d 645, 2006-Ohio-3638, 856 N.E.2d 321 (5th Dist.), and *Hudspath v. Caffaro Co.,* 11th Dist. Ashtabula No. 2004-A-0073, 2005-Ohio-6911, Colville argued that her testimony, that she was pushing a grocery cart containing her purchases, a grocery cart that Meijer supplied for that very purpose, and was looking around to avoid colliding with shoppers coming from the check-out lanes is evidence that attendant circumstances were present. This evidence, she contended, creates a genuine issue of material fact with respect to whether the puddle of water was an open-and-obvious condition that Colville should have seen. (Dkt. 38).

**{¶ 16}** The trial court granted Meijer's motion for summary judgment, relying on our holding in *Brant v. Meijer* to find that the puddles of water were an open-and-obvious condition as a matter of law. The court cited Colville's testimony that she "could see the puddles after she slipped." The court rejected Colville's attendant-circumstances argument, stating: "Good grief, every shopper has to watch where they are pushing their cart so as not to run into others and store displays; and it is not as if the carts are moving at 25 mph." The court noted that Colville did not say that the cart was so full that it blocked her view of the floor ahead of her; rather, she "simply indicated she was not looking at the floor." The court further found: "The condition in this case was observable; they were the type of conditions (puddles of water) which are known to be located in front of ice vending machines in the summer, and there was nothing which distracted the Plaintiff from seeing the puddles and avoiding them." (Dkt. 40).

{¶ 17}   In support of its motion for summary judgment, Home City Ice argued that Colville had no evidence that it was in any way negligent.   Home City Ice contended that Colville's belief that it was somehow responsible for the puddle of water was purely speculative.   Home City Ice also relied on Unger's testimony that on the day he was recorded putting ice into the icebox at the Troy Meijer there was no water on the floor.   Finally, Home City Ice also argued that the puddle was an open-and-obvious condition, relieving it of any liability under premises liability theory.   (Dkt. 30).

{¶ 18}   Colville argued in her opposition to Home City Ice's summary-judgment motion that, based on her testimony that she saw ice being delivered when she arrived at the Meijer store, reasonable minds could infer that Home City Ice was responsible for the puddle of water in front of the ice machine that had caused her to slip and fall.   Colville relied on the holding of the Fourth District Court of Appeals in *Hickman v. Wal-Mart Stores E., Inc.*, 4th Dist. Washington No. 07CA41, 2008-Ohio-1221, in which the appellate court found that genuine issues of material fact existed as to whether an employee who had earlier been working on a display with a clear, slick substance was the cause of the "clear waxy substance" directly in front of the display on which that plaintiff slipped.   Colville also pointed to the same evidence of attendant circumstances that she cited in her opposition to Meijer's motion to argue that a genuine issue of material fact existed regarding whether the puddles were an open-and-obvious condition.

{¶ 19}   The trial court also granted Home City Ice's motion for summary judgment. The court distinguished the holding in *Hickman*, noting that in that case there was testimony that Wal-mart's vendor had been servicing the display in the store containing the waxy

substance that later caused the plaintiff to slip and fall. The court rejected Colville's attendant-circumstances argument for the same reasons that it rejected the argument when it granted Meijer's motion for summary judgment. (Dkt. 43).

{¶ 20} Colville filed a notice of appeal in this Court from both grants of summary judgment. She now assigns two errors for our review. We will begin with the second assignment of error, an order that better facilitates our review.

{¶ 21} SECOND ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN GRANTING DEFENDANTS-APPELLEES MEIJER AND HOME CITY SUMMARY JUDGMENT BASED ON THE OPEN AND OBVIOUS DOCTRINE.

{¶ 22} Summary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law. Civ.R. 56(c). The burden of showing that no genuine issue of material fact exists is on the moving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 375 N.E.2d 46 (1978). All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. *Morris v. First National Bank & Trust Co.*, 21 Ohio St.2d 25, 254 N.E.2d 683 (1970). In reviewing a trial court's grant of summary judgment, an appellate court must view the facts in a light most favorable to the party who opposed the motion. *Osborne v. Lyles*, 63 Ohio St.3d 326, 587 N.E.2d 825 (1992). Further, the issues of law involved are reviewed de novo. *Nilavar v. Osborn*, 127 Ohio App.3d 1, 711 N.E.2d 726 (2d Dist.1998).

{¶ 23}     It is fundamental that in order to establish a cause of action for negligence the plaintiff must show (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately resulting therefrom. *Menifee v. Ohio Welding Prod., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984).

A business owner owes an invitee a duty of ordinary care and must maintain the business premises in a reasonably safe condition so that invitees are not unnecessarily and unreasonably exposed to danger. *Campbell v. Hughes Provision Co.* (1950), 153 Ohio St. 9, 41 O.O. 107, 90 N.E.2d 694. Whether an owner has breached that duty depends on the owner's knowledge of the hazard and opportunity to remove it or warn of it. *Anaple v. Standard Oil Co.* (1955), 162 Ohio St. 537, 55 O.O. 424, 124 N.E.2d 128. Whether the owner acted with reasonable care under the circumstances is a question of fact for the jury. *Keister v. Park Centre Lanes* (1981), 3 Ohio App.3d 19, 3 OBR 20, 443 N.E.2d 532.

[*Detrick v. Columbia Sussex Corp.*, 90 Ohio App.3d 475, 477, 629 N.E.2d 1081 (2d Dist.1993).]

{¶ 24}     In *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968), a boy delivering newspapers slipped and fell on ice and snow that had accumulated on the front steps of the defendant's building. The boy saw the accumulation when he approached the steps. Affirming a directed verdict for the defendant on the slip-and-fall claim, the Supreme Court held in its syllabus:

1.   An occupier of premises is under no duty to protect a business

invitee against dangers which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them.

2. The dangers from natural accumulations of ice and snow are ordinarily so obvious and apparent that an occupier of premises may reasonably expect that a business invitee on his premises will discover those dangers and protect himself against them. *(Debie v.Cochran Pharmacy-Berwick, Inc.,* 11 Ohio St.2d 38, 227 N.E.2d 603, approved and followed.)

3. Ordinarily, an owner and occupier has no duty to his business invitee to remove natural accumulations of snow and ice from private walks and steps on his premises. (Paragraph two of the syllabus in *Debie v. Cochran Pharmacy- Berwick, Inc.*, 11 Ohio St.2d 38, 227 N.E.2d 603, approved and followed.)

**{¶ 25}** In *Brant v. Meijer, Inc.*, 2d Dist. Montgomery No. 21369, 2006-Ohio-6300, the plaintiff slipped and fell in a puddle of water near the floral department inside a Meijer store. *Id.* at ¶ 1. The trial court granted summary judgment to Meijer on the plaintiff's claim of negligence. We affirmed the trial court's decision, stating:

Brant's testimony makes clear that she would have been able to discover and avoid the puddle if she had exercised ordinary care in watching where she was going. Brant testified that her view of the floor was not obstructed. Her testimony that she saw the puddle after her fall establishes that it was visible to an ordinary observer looking directly where she was

walking. By looking elsewhere, Brant "abandoned the duty imposed to look." *Backus v. Giant Eagle* (1996), 115 Ohio App.3d 155. Had she not done so, she would have seen the puddle.

{¶ 26} Subsequent to *Brant,* this Court decided two similar cases about the open and obvious doctrine. In *Trimble v. Frisch's Ohio, Inc.*, 2d Dist. Clark No. 07CA18, 2007-Ohio-4616, the plaintiff stepped onto the ceramic-tile floor around the breakfast bar of a restaurant and slipped and fell on water that was standing on the floor. The trial court granted the defendant's motion for summary judgment on the plaintiff's negligence claim. We reversed, stating:

> [R]easonable minds could reach different conclusions on whether the condition and the hazard associated with it that caused Trimble's fall were open and obvious. Therefore, a genuine issue of material fact remains for determination, and the trial court erred when it granted Frisch's motion for summary judgment.

But, in *Trimble* there was a witness's affidavit that indicated that the water on the floor "was clear and odorless and was not visible until I knelt down to help Mrs. Trimble." *Id.* at ¶ 7.

{¶ 27} In *Middleton v. Meijer, Inc.*, 2d Dist. Montgomery No. 23789, 2010-Ohio-3244, the plaintiff walked to the rear of a Meijer store and picked up two gallons of milk, one in each hand. The plaintiff then walked through the main grocery aisle to look at sale displays. As he was walking, the plaintiff felt his left foot slide out from beneath him, causing him to "do the splits and hit his knee on the ground." When he examined the floor, which was a light color, the plaintiff discovered that he had slipped on a puddle of clear,

liquid laundry detergent. The evidence showed that, "when on the floor, Middleton could see that the 'substance had been all tracked through.'" *Id*. at ¶ 2. There was also evidence that another store patron saw the substance about ten minutes before the fall and went to inform store management about the spill. *Id*. at ¶ 3.

**{¶ 28}** Citing *Brant v. Meijer, Inc.*, the trial court in *Middleton* granted summary judgment for the defendant, finding that the clear liquid laundry detergent was an open-and-obvious condition. In a divided opinion, with both concurring and dissenting aspects, this Court reversed, stating: "Although store owners have no duty to protect its patrons from tracked-in water from snow or rain near the entrance to the stores, they do have a duty to protect patrons from clear substances on their store floors that are not open and obvious dangers. We believe a jury could find from the plaintiff's evidence that the laundry detergent was not an open and obvious danger to the plaintiff Middleton and that the defendant had sufficient notice of its presence in order to protect the plaintiff from falling in it." *Id*. at ¶ 17. Thus, the *Middleton* decision is a mixed analysis of the open-and-obvious doctrine and of whether a store's actual notice of a hazard affects the store's duty to eliminate it.

**{¶ 29}** In the present case, we agree with the trial court that, on this record, there is no genuine issue of material fact that the hazard was open and obvious.

**{¶ 30}** Plaintiff argues, though, that the open-and-obvious defense should not apply in this case because there were "attendant circumstances." "As a corollary to the open-and-obvious doctrine, [this Court has] recognized that there may be attendant

circumstances [that] divert the individual's attention from [a] hazard and excuse her failure to observe it."  *Olivier v. Leaf & Vine*, 2d Dist. Miami No. 2004 CA 35, 2005-Ohio-1910, ¶ 22. While there is no precise definition of "attendant circumstances," it generally refers to "any distraction that would come to the attention of [the plaintiff] in the same circumstances and reduce the degree of care an ordinary person would exercise at the time."  *McLain v. Equitable Life Assur. Co. of the U. S.*, 1st Dist. Hamilton No. C-950048, 1996 WL 107513, *5 (Mar. 13, 1996), quoting *France v. Parliament Park Townhomes*, 2d Dist. Montgomery No. 14264, 1994 WL 151658 (Apr. 27, 1994).  Attendant circumstances do not, though, include regularly encountered, ordinary, or common circumstances.  *Cooper v. Meijer*, 10th Dist. Franklin No. 07AP-201, 2007-Ohio-6086, ¶ 17.

{¶ 31}    The plaintiff's testimony is that she was not distracted at all.  Accordingly, there is no factual basis on which to apply the attendant-circumstances exception.  Moreover, she has not cited evidence of any circumstances that were out of the ordinary, uncommon, or not regularly encountered.  We agree with the trial court that "there was nothing which distracted the plaintiff from seeing the puddles and avoiding them,"  (Dkt. 40).  There is no evidence, and therefore no genuine issue of material fact, to support a finding of attendant circumstances.

{¶ 32}    We see no reason that, under the circumstances of this case, Home City Ice cannot also assert the open-and-obvious defense, even though their potential for responsibility is not derived from a premises-liability theory.  Home City Ice concedes in its brief that it "owns and maintains an ice machine within the Meijer store [that] is located within the vicinity of Mrs. Colville's fall."  (Brief, p.11).  That concession is supported by the

deposition testimony of Ian Unger. But Home City Ice was not the owner of the premises, and although their equipment occupied part of the store, the fall occurred in front of the machine, not in or under it. Home City Ice's concession does not display that degree of control over the premises necessary for it, as an occupier, to have an affirmative duty to discover and cure a danger that it may have created. If Home City Ice is liable to Colville for the injuries that proximately resulted from her slip and fall, it is for ordinary negligence – a breach of a duty of care that Home City Ice owed Colville that proximately resulted in Colville's injuries and losses. But the open-and-obvious defense applies in product-liability cases too, the common law development of which has been codified in R.C. 2307.76(B). The defense further applies when the theory of liability is the creation of a nuisance. *See Moody v. Coshocton Cty*., 9th Dist. Wayne No. 05CA0059, 2006-Ohio-3751. Furthermore, Home City Ice's duty, if it has any, would be co-extensive with that of Meijer, the actual owner of the premises. Accordingly, we believe the open-and-obvious defense applies and the trial court's grant of summary judgment to Home City Ice on that basis should be affirmed.

{¶ 33}    The second assignment of error is overruled.

{¶ 34}    FIRST ASSIGNMENT OF ERROR

THE     TRIAL     COURT     ERRED     BY     GRANTING DEFENDANT-APPELLEE HOME CITY SUMMARY JUDGMENT BASED ON LACK OF CREATION OR KNOWLEDGE OF THE HAZARD.

{¶ 35}    A second argument raised by Home City Ice, and adopted by the trial court, is that the plaintiff presented no evidence that it created or was aware of the puddle. Therefore, Home City Ice argues, summary judgment was proper.

**{¶ 36}** Colville testified that she saw bags of ice being delivered to the Meijer store when she arrived that day. The trial court found: "The Plaintiff's perception leads to the inference that Home City delivered the ice on the morning in question." (Dkt. 43). The court rejected Colville's contention that Home City Ice had created the puddles as "simply a guess." We agree.

**{¶ 37}** We assume, and the evidence supports, that Home City Ice delivered ice sometime that morning. But that fact alone, in our view, is insufficient to draw a reasonable inference that Home City must have therefore breached a duty by creating, or failing to remove, water on the floor in a public area adjacent to their machine. Undoubtedly, when considering a motion for summary judgment, the court must construe the evidence and pleadings "most strongly" in that party's favor. Civ.R. 56(C). But an inference should not be drawn on a speculative or remote basis. The plaintiff did not see water coming from the machine. (T. 31). Nor did she know where the water came from. *Id*. At best, she "surmised" that the water came from dripping bags of ice. We agree with the trial court that this is "simply a guess."

**{¶ 38}** Unger's deposition testimony includes references to a video he viewed prior to his deposition testimony. The questions posed to him that referred to that video, and Unger's responses, suggest that the video depicts Unger delivering ice to the machine at the Troy Meijer on the day Colville fell. The colloquy further suggests that the video shows that Unger didn't clean the floor around the machine. Perhaps if the video itself had been offered in evidence, we could draw an inference that would preclude summary judgment. But we are unable to rely on Unger's testimony about the video. The video is not part of the record.

Further, there is no indication from Unger's testimony what  time of day he was recorded making the delivery or even any positive statement that it was the same day that Colville fell.

**{¶ 39}**    As the trial court did, we distinguish *Hickman v. Wal-Mart Stores E., Inc.*, 4th Dist. Washington No. 07CA41, 2008-Ohio-1221.  In *Hickman* there was evidence that a display technician had been working in the exact area of the fall.  More importantly, there was testimony from the store manager who said that it was his (lay) opinion that the "clear, slick substance" on the floor was left by that display technician.  Thus, in *Hickman* the link between the substance and person responsible for it was the subject of direct testimony rather than the "surmise" of the plaintiff.

**{¶ 40}**    Because the plaintiff here has presented no admissible evidence that defendant Home City Ice created or was aware of the water, the trial court correctly granted the motion for summary judgment on that issue.

**{¶ 41}**    The first assignment of error is overruled.

**{¶ 42}**    The judgment of the trial court is affirmed.

. . . . . . . . . . . . . .


DONOVAN, J., concurring:

**{¶ 43}**    In my view the dissent mischaracterizes the majority opinion by suggesting that our holding creates "further mischief."  The open and obvious nature of a hazard on any premises is analyzed by a fact-specific inquiry and must be determined on a case by case basis.  For this reason, previously decided open and obvious cases tend to be of limited value.  Although the dissent is critical of the *Springer* and *Brant* decisions, both cases affirmed a

finding by the trial court that the conditions at issue were "readily observable." Thus, an objective test was ultimately utilized in both cases, supporting an affirmance of summary judgment for the defendants.

{¶ 44} Furthermore, the dissent unnecessarily urges a motion for enbanc review when a majority of the current court recently found no conflict in our open and obvious jurisprudence. *Middleton v. Meijer, Inc.*, 2d Dist. Montgomery No. 23789, 2010-Ohio-3244. The dissent does not rely upon any case decided after *Middleton* to suggest a conflict now exists.

. . . . . . . . . .


GRADY, P.J., dissenting:

{¶ 45} The majority perpetuates the erroneous test the Supreme Court expressly rejected for applying the "open and obvious" doctrine in premises liability cases in *Armstrong v. Best Buy, Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088. The Supreme Court wrote:

> We continue to adhere to the open-and-obvious doctrine today. In reaching this
> conclusion, we reiterate that when courts apply the rule, they must focus on the
> fact that the doctrine relates to the threshold issue of duty. <u>By focusing on the
> duty prong of negligence, the rule properly considers the nature of the
> dangerous condition itself, as opposed to the nature of the plaintiff's conduct in
> encountering it.</u> The fact that a plaintiff was unreasonable in choosing to
> encounter the danger is not what relieves the property owner of liability.

Rather, it is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff. Ferrell, Emerging Trends in Premises Liability Law: Ohio's Latest Modification Continues to Chip Away at Bedrock Principles (1995), 21 Ohio N.U.L.Rev. 1121, 1134. Even under the Restatement view, we believe the focus is misdirected because it does not acknowledge that the condition itself is obviously hazardous and that, as a result, no liability is imposed. (Emphasis supplied).

{¶ 46}    In the present case, the majority relies on two facts to find that the puddle of water that Plaintiff Colville claims caused her to fall presented an open and obvious hazard. First, Plaintiff was able to see the puddle after she fell.[2]   Second, because her attention was on the door she was approaching, Plaintiff failed to see the puddle of water before she fell. However, both matters involve Plaintiff's conduct in encountering the hazardous condition, which *Armstrong* expressly rejected as a basis to find the condition was an open and obvious hazard.

{¶ 47}    The genesis of the majority's error appears to be the holding in *Springer v. University of Dayton*, 2d Dist. Montgomery No. 21358, 2006-Ohio-3198, in which we wrote that "the determinative issue is whether the condition is observable.  Even in cases in which the plaintiff did not actually notice the condition until after he or she fell, [courts] have found no duty to exist in cases where the plaintiff could have seen the condition if he or she had

---

[2] The fact that Colville, upon subsequent close examination, was able to see the puddle after she fell is, of course, not determinative of whether she should have seen it before she fell, in the exercise of ordinary care.

looked." *Id.* at ¶ 5.

{¶ 48} Whether a condition is "observable" for purposes of the open and obvious doctrine is not determined by whether a plaintiff could have seen the condition if he or she had looked. That's the very subjective test that *Armstrong* rejected in favor of an objective test, "the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." *Armstrong* at ¶ 13.

{¶ 49} We explained the open and obvious standard in *Armstrong* in *Trimble v. Frisch's Ohio, Inc.*, 2d Dist. Clark No. 07CA0018, 2007-Ohio-4616, writing: "Hazards are open and obvious when they are inherent in the condition from which they arise and the condition itself is known to the invitee or by reason of its particular size or configuration the condition is readily discoverable." *Trimble* at ¶ 27.

{¶ 50} The objective criteria for open and obvious hazards we explained in *Trimble* has been the basis for application of the open and obvious doctrine by the Supreme Court in multiple cases: *Sidle v. Humphrey*, 13 Ohio St.3d 45, 233 N.E.2d 589 (1968), and *Debie v. Cochran Pharmacy-Berwick, Inc.*, 11 Ohio St.2d 38, 277 N.E.2d 603 (1967), natural accumulations of snow and ice; *Armstrong*, a metal guardrail fixed to a floor; and, more recently, *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, steps that failed to conform to a building code. None of those cases applied the subjective test the majority employs in the present case. Further, in none of these cases was the open and obvious doctrine applied to a transient condition involving a substance foreign to its location, such as the puddle of water in the present case.

{¶ 51} Plaintiff argues that "attendant circumstances" distracted her attention.

Unfortunately, that matter relates to Plaintiff's conduct in encountering the hazard, which is the test that *Armstrong* rejects. To that extent, Plaintiff is the author of the error the majority commits. But, we should not ourselves create error merely because the error is invited.

{¶ 52} The further mischief this holding creates is that it continues a conflict in this court's decisions applying the open and obvious doctrine. In *Brant v. Meijer, Inc.*, 2d Dist. Montgomery No. 21369, 2006-Ohio-6300, we affirmed a summary judgment for a defendant on a plaintiff's claim that she slipped and fell on a puddle of water on the floor of a retail store. In *Middleton v. Meijer*, 2d Dist. Montgomery No. 23789, 2010-Ohio-3244, we reversed a summary judgment for a defendant on a plaintiff's claim that he slipped and fell on a puddle of clear detergent on the floor of a retail store. Now, on similar facts, we affirm a summary judgment for a defendant. Each of those cases involved different collateral facts which were of nebulous significance. The problem is in our conflicting applications of the open and obvious doctrine based on the plaintiff's conduct. I urge Plaintiff in the present case to seek an en banc review of this decision pursuant to App.R. 26(A)(2).

. . . . . . . . . .

Copies mailed to:

Jeffrey G. Chinault, Esq.
Erin B. Moore, Esq.
Jared Wagner
Steven F. Stofel, Esq.
Brian R. McHenry
Hon. Robert J. Lindeman