[Cite as *Reeves v. St. Leonard*, 2017-Ohio-7433.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| CLIFFORD REEVES, et al. | : | |
| | : | |
| Plaintiffs-Appellants | : | C.A. CASE NO. 27494 |
| | : | |
| v. | : | T.C. NO. 16-CV-1736 |
| | : | |
| ST. LEONARD, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ____1st____ day of _____September_____, 2017.

. . . . . . . . . . .

AARON G. DURDEN, Atty. Reg. No. 0039862, 10 W. Monument Avenue, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellants

C. JESSICA PRATT, Atty. Reg. No. 0087210, 600 Vine Street, Suite 2650, Cincinnati, Ohio 45202
    Attorney for Defendants-Appellees

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Clifford and Deborah Reeves[1] appeal from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment to St. Leonard,

---

[1] Deborah Reeves was listed as a plaintiff in the caption of the complaint, and she is named as an appellant in the notice of appeal. We note, however, that the complaint contained no allegations or claims related to her.

Franciscan Living Communities, and The Franciscan at St. Leonard's (collectively, "the St. Leonard Defendants"). For the following reasons, the trial court's judgment will be affirmed.

## I. Background and Procedural History

{¶ 2} Between November 2014 and April 2015, Clifford Reeves was a member of The Franciscan Center, a fitness center at St. Leonard's residential community, and he attended two or three times per week to participate in yoga classes. At 12:50 p.m. on April 9, 2015, Reeves arrived at The Franciscan Center for a 1:00 p.m. yoga class. Reeves entered the front door, walked across the short (approximate four feet) carpeted area to the front desk in the lobby area, and signed in. Reeves then walked past the front desk and toward the hallway to get to the yoga class. As Reeves stepped off the carpet onto the hardwood flooring, he slipped and fell. At the time of Reeves's fall, an employee, Brandy Gillispie, was mopping the floor in the large lobby area. Reeves had noticed Gillispie, but had not seen any "wet floor" signs.

{¶ 3} Several individuals came to Reeves's aid after his fall. Reeves was transported to the hospital by ambulance. He apparently suffered serious injuries to his right knee, right hip, right shoulder, head, and back.

{¶ 4} In April 2016, the Reeveses brought a personal injury action against the St. Leonard Defendants. The St. Leonard Defendants subsequently filed a motion for summary judgment, arguing that (1) Reeves was aware that the floor was being mopped and (2) an employee had placed adequate warning signs notifying Reeves of the danger of wet floors. The St. Leonard Defendants supported their motion with the deposition transcripts of Reeves and Gillispie and the affidavits of Janis Loomis, another participant

in the yoga class, and Jack Harless, Director of Wellness at The Franciscan Center.

{¶ 5} The Reeveses opposed the motion, arguing that attendant circumstances caused him not to see the "wet floor" signs and that Gillispie created a hazard that caused his injuries. Reeves attached unauthenticated photographs of the lobby area, his own affidavit, and the affidavit of his attorney.

{¶ 6} On February 10, 2017, the trial court granted the St. Leonard Defendants' summary judgment motion. The trial court described the issue before it as "whether Mr. Reeves himself was aware of the hazard posed by the wet floor and/or Defendants adequately discharged their obligations to warn Mr. Reeves of that hazard, thus making the floor's hazardous condition open and obvious." The trial court rejected Reeves's claim that attendant circumstances existed to reduce his care, stating that Reeves had provided "no specifics" as to anything that may have distracted his attention from the freshly mopped floor. The trial court further concluded that the hazard posed by the wet floor was open and obvious, reasoning that Reeves had seen Gillispie mopping the floor before he fell and there was no genuine issue of material fact that visible "wet floor" signs were in place prior to Reeves's fall. The trial court found "not well taken" Reeves's attempts to "discredit" the testimony of Loomis and Gillispie that "wet floor" signs were in close proximity to where Reeves fell.

{¶ 7} The Reeveses appeal from the trial court's judgment.

## II. Summary Judgment Standard

{¶ 8} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in

favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).

{¶ 9} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher* at 293; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id.* " '[A] non-movant's own self-serving assertions, whether made in an affidavit, deposition or interrogatory responses, cannot defeat a well-supported summary judgment when not corroborated by any outside evidence.' " *Schlaegel v. Howell*, 2015-Ohio-4296, 42 N.E.3d 771, ¶ 23 (2d Dist.), quoting *White v. Sears, Roebuck & Co.*, 10th Dist. Franklin No. 10AP-294, 2011-Ohio-204, ¶ 9. Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

{¶ 10} We review the trial court's ruling on a motion for summary judgment de novo. *Schroeder v. Henness*, 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 42. De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence, without deference to the trial court, to determine whether, as a matter of law, no genuine issues exist for trial. *Ward v. Bond*,

2d Dist. Champaign No. 2015-CA-2, 2015-Ohio-4297, ¶ 8, citing *Brewer v. Cleveland City Schools Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997).

### III. Negligence Claim for Business Invitee

{¶ 11} In order to prevail on a negligence claim, "one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom." *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285, 423 N.E.2d 467 (1981); *Long v. Speedway, L.L.C.*, 2d Dist. Montgomery No. 26851, 2016-Ohio-3358, ¶ 7. The status of a person who enters the land of another defines the scope of the legal duty owed to that person. *Gladon v. Greater Cleveland Reg. Transit Auth.*, 75 Ohio St.3d 312, 315, 662 N.E.2d 287 (1996).

{¶ 12} A business invitee "is one who enters another's land by invitation for a purpose that is beneficial to the owner." *Id.* With respect to business invitees, an owner's duty is to keep the premises in reasonably safe condition and warn of dangers that are known to the owner. *Hill v. Mullins*, 2d Dist. Montgomery No. 27127, 2017-Ohio-1302, ¶ 14. Liability only attaches when an owner has "superior knowledge of the particular danger which caused the injury," as an "invitee may not reasonably be expected to protect himself from a risk he cannot fully appreciate." *Uhl v. Thomas*, 12th Dist. Butler No. CA2008-06-131, 2009-Ohio-196, ¶ 13, citing *LaCourse v. Fleitz*, 28 Ohio St.3d 209, 210, 503 N.E.2d 159 (1986). Reeves was clearly a business invitee.

{¶ 13} However, "if a danger is open and obvious, a property owner owes no duty of care to individuals lawfully on the premises." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 14. To be open and obvious, a hazard must not be concealed and must be discoverable by ordinary inspection. *Larrick v.*

*J.B.T., Ltd.*, 2d Dist. Montgomery No. 21692, 2007-Ohio-1509, ¶ 11, citing *Parsons v. Lawson Co.*, 57 Ohio App.3d 49, 50-51, 566 N.E.2d 698 (5th Dist.1989).   The relevant issue is not whether an individual observes the condition, but whether the condition is capable of being observed.   *Id.*, citing *Lydic v. Lowe's Cos., Inc.*, 10th Dist. Franklin No. 01AP-1432, 2002-Ohio-5001, ¶ 10.

{¶ 14} "Attendant circumstances" may affect the applicability of the open and obvious doctrine.   Attendant circumstances have not been and probably cannot be precisely defined, but the term has been held to include any distraction that would come to the attention of a person in the same circumstances and reduce the degree of care an ordinary person would exercise at the time.   *Speedway*, 2d Dist. Montgomery No. 26851, 2016-Ohio-3358, at ¶ 10.   "Both circumstances contributing to and those reducing the risk of the defect must be considered.   The totality of the circumstances of each case must be examined to determine if, as a whole, they create a substantial defect." *Stockhauser v. Archdiocese of Cincinnati*, 97 Ohio App.3d 29, 33, 646 N.E.2d 198 (2d Dist.1994), citing *France v. Parliament Park Townhomes*, 2d Dist. Montgomery No. 14264, 1994 WL 151658 (Apr. 27, 1994).

{¶ 15} For attendant circumstances to negate the application of the open and obvious doctrine, they must not only be present, but must create "a greater than normal, and hence substantial, risk of injury."   *Id.*, citing *Turner v. Burndale Gardens Co.*, 2d Dist. Montgomery No. 12807, 1991 WL 270662 (Dec. 18, 1991).   The attendant circumstances must, taken together, divert the attention of the person, significantly enhance the danger of the defect, and contribute to the injury.   *Id.*   But attendant circumstances do not include regularly encountered, ordinary, or common circumstances.

*Meyer v. Dayton*, 2016-Ohio-8080, 74 N.E.3d 921, ¶ 19 (2d Dist.), citing *Colville v. Meijer Stores Ltd. Partnership*, 2d Dist. Miami No. 2011-CA-011, 2012-Ohio-2413, ¶ 30.   Also, "[a]ttendant circumstances do not include the individual's activity at the time of the fall unless the individual's attention was diverted by an unusual circumstance of the property owner's making."   *Id.*, citing *McConnell v. Margello*, 10th Dist. Franklin No. 06AP-1235, 2007-Ohio-4860, ¶ 17.

### IV. Reeves's Fall at The Franciscan Center

{¶ 16} On appeal, the Reeveses claim that the trial court erred in granting summary judgment to the St. Leonard Defendants, because the St. Leonard Defendants failed to maintain the premises in a reasonably safe condition and the hazard was not open and obvious.

{¶ 17} Five individuals who were present at St. Leonard's on the day of Reeves's fall provided evidence about the condition of the floor at The Franciscan Center and the presence of "wet floor" signs.   Janis Loomis testified in her deposition that she attended yoga classes at the Franciscan Center with Reeves, along with a dozen or more other individuals.   Loomis testified that she typically arrived five to ten minutes before the start of class, and most people were already present.   On the day of Reeves's fall, Ms. Loomis signed in and saw people standing around Reeves, who was on the floor; Loomis did not see Reeves fall.   Loomis recalled an employee with a mop, Sue (the yoga instructor), and John (another instructor) standing around Reeves.

{¶ 18} In her affidavit, Loomis stated, "I specifically recall seeing a wet floor sign in very close proximity to Mr. Reeves while he was lying on the floor.   The sign was approximately five (5) feet away from him with Mr. Reeves lying a little past the sign and

to the right (if looking at the scene from the area of the front door entrance)." (Loomis Aff., ¶ 7.) When asked at her deposition if the distance could have been at least ten feet, Loomis disagreed. Although she indicated that she was not good with distances, she explained that "ten feet seems like a long distance to me" and "[b]ecause in my memory, I saw him and the sign at the same time and it appeared relatively close." (Loomis Depo. at 31-32.) Loomis indicated that the distance was not "exactly five feet," but it was "in close proximity" to Reeves. (*Id.* at 32-33.)

{¶ 19} Brandy Gillispie worked as an environmental aide (housekeeper) at The Franciscan Center. Part of Gillipsie's responsibilities included mopping the wood floor in the lobby of the Center. Gillipsie testified that, when she mops the floors, she does one half (left or right), lets it dry, and then mops the other half. (Gillipsie at 29-30.) She also stated that she does not mop completely from front to back, so there is a dry path to walk down hallways. (*Id.* at 32-33.) Gillipsie stated that she uses three "wet floor" signs, which she puts down before she starts mopping. She stated, "I put one in front of the door, one in the middle right where the rest rooms is [sic], and one at the end before you get to that little hallway right there." (*Id.* at 33.) Gillispie testified that she leaves the signs up until the floor is dry. (*Id.* at 33.) She indicated that the hardwood floor takes 10 to 15 minutes to dry. (*Id.* at 30.)

{¶ 20} Gillispie worked the day of Reeves's fall, and she heard him scream after he fell, but did not see him fall. Gillispie indicated that Reeves fell to the side of the front desk (*id.* at 43), and she agreed that he had fallen on the floor that she had recently mopped (*id.* at 47). Gillispie testified that she had three "wet floor" signs up, as usual, and that she had begun mopping at the front of the building by the front desk. (*Id.* at 48.)

Gillispie testified that a "wet floor" sign was located near the spot where Reeves fell. (*Id.* at 54-56, 63.)

{¶ 21} Dianne Wheeler, Manager of Environmental Services, testified at her deposition that employees are instructed to mop half of the lobby area and let it dry before mopping the other half of the lobby area. Wheeler indicated that "wet floor" signs should be placed on the wet half of the lobby. (Wheeler Depo. at 12.) Wheeler had known Gillispie to properly mop the floors. Wheeler did not see Reeves's fall; she was contacted by Gillipsie after Reeves had left in an ambulance.

{¶ 22} Jack Harless, Director of Wellness at The Franciscan Center, stated in his affidavit that he was in his office when he heard Reeves yelling loudly. Shortly after Reeves began yelling, Gillispie informed him that Reeves had fallen. (Harless Aff. at ¶ 4.) Harless stated that he immediately went to the front lobby and saw Reeves lying on the floor. "It appeared that he had walked past the reception desk and had not yet reached the seating area when he fell." (*Id.* at ¶ 5.) Harless stated that Gillispie was in the process of mopping the floor in the lobby area, but he "specifically recall[ed] seeing a wet floor sign within three (3) to four (4) feet of Mr. Reeves. The wet floor sign was to the left of Mr. Reeves (if facing the front doors from the rear of the lobby area). The sign was almost right next to where Mr. Reeves was lying on the floor." (*Id.* at ¶ 7.) Harless expressed that "[t]he wet floor sign was clearly visible to anyone arriving through the front door of the lobby." (*Id.* at ¶ 8.)

{¶ 23} In opposition to St. Leonard's motion, Reeves relied on his own affidavit, in which he stated that he slipped on the wet wood floor. Reeves indicated that Gillispie was "some distance away" mopping another area of the floor, and that he was "not aware

the wooden floor remained wet after being mopped." Reeves stated, "There was no 'wet floor' sign in the vicinity of the area where I slipped and fell to cause my injuries[.]" (Reeves Aff. ¶ 8.)

{¶ 24} Reeves testified in his deposition that he entered the front door, walked across the carpeted area to the front desk in the lobby area, and signed in. He then walked past the front desk and toward the hallway to get to the yoga class. As Reeves stepped off the carpet onto the hard flooring, he slipped and fell. Reeves testified that he had noticed Gillispie mopping in another area of the lobby, but he had not seen any "Wet Floor" signs. Reeves testified that there was no "wet floor" sign close to where he landed on the floor. (Reeves at 35-36.)

{¶ 25} Reeves's attorney also submitted an affidavit, indicating that he had asked Loomis (during Loomis's deposition) to show him where Reeves had fallen and where she had seen the "wet floor" sign. He indicated that Loomis described Reeves's falling by the right side of the front desk and pointed out that the sign had been placed near the restrooms. The attorney indicated that the sign appeared to have been approximately "twenty (30) [sic] feet" from where Reeves had fallen.

{¶ 26} At the outset, we agree with the Reeveses that the "open and obvious" doctrine does not apply to this case. Although Reeves testified that he saw Gillispie mopping the floor in another area of the lobby, there was no evidence that it was readily apparent, through ordinary inspection, that the hardwood floor was wet where Reeves fell. *Compare Trimble v. Frisch's Ohio, Inc.*, 2d Dist. Clark No. 07CA18, 2007-Ohio-4616 (genuine issues of material fact exists regarding whether water on the floor around breakfast bar was open and obvious). Again, open and obvious hazards are those

hazards that are neither hidden nor concealed from view and are discoverable by ordinary inspection. *E.g.*, *Strayer v. Cox*, 2015-Ohio-2781, 38 N.E.3d 1162, ¶ 30 (2d Dist.), quoting *Blair v. Vandalia United Methodist Church*, 2d Dist. Montgomery No. 24082, 2011-Ohio-873, ¶ 15.

{¶ 27} In short, there was no evidence that the wet hardwood floor was open and obvious to guests at The Franciscan Center. And, the presence of "wet floor" signs did not alter whether the hazard itself (i.e., wet floor) was open and obvious. Rather, in the absence of evidence that Reeves should have seen that the floor was wet (thus negating any duty to warn him of the danger), the placement of "wet floor" signs was relevant to whether the St. Leonard Defendants met their duty of care, i.e., whether they adequately warned Reeves of the danger posed by the wet floor.

{¶ 28} Moreover, in the absence of an open and obvious hazard, the "attendant circumstance" doctrine is likewise inapplicable. As stated above, attendant circumstances negate the open and obvious doctrine and, therefore, attendant circumstances are considered only when an open and obvious hazard exists. Regardless, Reeves presented no evidence that any attendant circumstances existed that would have diminished his ability to appreciate the wet floor.

{¶ 29} Accordingly, the issue before us is whether there are genuine issues of material fact as to whether the St. Leonard Defendants satisfied their duty to warn Reeves of the wet floor conditions. The statements of Gillispie, Loomis, and Harless indicate that, prior to Reeves's fall, "wet floor" signs were present and were located very near to where Reeves fell.

{¶ 30} Reeves stated that he did not see any "wet floor" signs and that none were

present, but his affidavit and deposition testimony do not create a factual question as to whether the signs were present and located where the witnesses testified. Reeves did not indicate that he had been looking for "wet floor" signs, given that he had seen Gillipsie mopping in another area of the lobby, or otherwise indicate that he was attentive to whether "wet floor" signs were present. And, although the record suggests that numerous other people had likely entered The Franciscan Center to attend the yoga class, not to mention the emergency medical technicians who took Reeves to the hospital, Reeves provided no evidence to corroborate his conclusion that no "wet floor" signs were located near where he had fallen. Accordingly, we conclude that Reeves's affidavit and deposition testimony were insufficient to create a genuine issue of material fact as to the presence of "wet floor" signs.

{¶ 31} Reeves's only additional evidence to contradict the St. Leonard Defendants' evidence about the close placement of the "wet floor" signs came from Reeves's attorney, who presented an affidavit that attempted to undermine Loomis's testimony about the proximity of the "wet floor" sign. The trial court found the attorney's affidavit to be "an inappropriate attempt to impeach Ms. Loomis's sworn observations," and held that it did not create a genuine issue of material fact.

{¶ 32} On appeal, the Reeveses do not rely on (or even mention) their attorney's affidavit. Rather, they assert that "[t]he differing statements of Mr. Reeves, Ms. Gillispie, and Ms. Loomis created a genuine issue of material fact regarding whether wet floor warnings were displayed and where those signs were placed." Upon review of the statements by Reeves, Gillispie, Loomis, Harless, and Wheeler, we find that no genuine issue of material fact that "wet floor" signs were placed in close proximity to where Reeves

fell and that the signs provided adequate notice of the wet floors. Accordingly, the trial court properly concluded that the St. Leonard Defendants are entitled to judgment as a matter of law.

## V. Conclusion

**{¶ 33}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

HALL, P.J. and TUCKER, J., concur.

Copies mailed to:

Aaron G. Durden
C. Jessica Pratt
Hon. Mary L. Wiseman