[Cite as *Patriot Water Treatment, L.L.C. v. Ohio Dept. of Natural Resources*, 2013-Ohio-5398.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Patriot Water Treatment, LLC, :

       Plaintiff-Appellant, :

                                       No. 13AP-370
v. :                      (C.C. No. 2012-07951)

Ohio Department of Natural Resources, :         (ACCELERATED CALENDAR)

       Defendant-Appellee. :

D E C I S I O N

Rendered on December 10, 2013

*Bott Law Group LLC, April R. Bott, Sarah L. Herbert*, and *MacDonald W. Taylor*, for appellant.

*Michael DeWine*, Attorney General, *Randall W. Knutti* and *Emily M. Simmons*, for appellee.

APPEAL from the Court of Claims of Ohio

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Patriot Water Treatment, LLC ("Patriot"), appeals from a judgment entered by the Court of Claims of Ohio. The court granted a motion to dismiss Patriot's complaint that had been filed by defendant-appellee, Ohio Department of Natural Resources ("ODNR"), pursuant to Civ.R. 12(B)(1) and (6). The court dismissed the complaint based on its conclusion that: (1) Patriot had failed to state a spoliation claim, and (2) the Court of Claims lacked jurisdiction over Patriot's claim that ODNR violated R.C. 149.351, Ohio's public records retention statute.

{¶ 2} Patriot raises two assignments of error, as follows:

> [1.] The Court of Claims erred in granting Appellee's Motion to Dismiss Count I of Appellant's Complaint.

[2.] The Court of Claims erred in granting Appellee's Motion to Dismiss Count II of Appellant's Complaint.

{¶ 3}    For the following reasons, we affirm in part and reverse in part.

## I. Case History

{¶ 4}    Patriot initiated this action on November 2, 2012, when it filed a complaint alleging "spoliation of evidence" and "unlawful disposition or destruction of public records." (Complaint, ¶ 1.) It sought $3.5 million in damages based on its spoliation claim and injunctive relief, monetary damages, and attorney's fees based on the alleged violation of the public records retention statute.

{¶ 5}    The complaint alleged that, on August 10, 2010, the Ohio Environmental Protection Agency ("OEPA"), had issued Patriot a permit to install and operate a water treatment facility that was designed to treat solid-containing waters emanating from the oil and gas industry. Patriot's permit, in conjunction with an OEPA permit issued to the city of Warren, allowed Patriot to send the water after treatment to Warren's water treatment facility for further processing. The complaint alleged that OEPA and ODNR had corresponded prior to OEPA's issuance of the permit concerning whether the proposed facility would comply with Ohio statutes, and specifically R.C. 1509.22.[1] Patriot further alleged that, after receiving the 2010 permit, it invested millions of dollars to build its treatment facility, which began operating in 2011.

{¶ 6}    In addition, the complaint alleged that, in December 2010, new directors of both OEPA and ODNR were appointed and that these officials disagreed with their agencies' prior interpretation of R.C. 1509.22. On May 16, 2011, the new OEPA Director, Scott Nally, wrote a letter to the new ODNR director, David Mustine, in which Nally memorialized their discussions concerning interpretation of R.C. 1509.22 and stated that " 'moving forward' ODRN will not authorize discharges of gas well wastewater through [publically owned treatment works]," such as that operated by the city of Warren. (Complaint, ¶ 14.)

{¶ 7}    The complaint further alleged that the next day, May 17, 2011, Patriot sent a letter to both directors expressing the company's concern that the state had "decid[ed] to take away Patriot's right to [do] business in Ohio." (Complaint, ¶ 18.) The complaint

---

[1] R.C. 1509.22 regulates the placement in surface or ground water of brine or other fluids associated with the development of oil and gas resources.

alleged that, on June 10, 2011, Patriot representatives met with ODNR staff, including the in-house legal counsel, and informed ODNR that litigation involving ODNR was probable. Patriot further alleged that, on March 19, 2012, OEPA issued modified permits to Patriot and also to the city of Warren that precluded Warren from accepting water from Patriot on or after April 1, 2012, prompting Patriot to discontinue its water-treatment operations and initiate litigation against both OEPA and ODNR.

{¶ 8} The complaint alleged additional facts relative to public records requests made by Patriot. Patriot claimed that its first public records request to ODNR was made on May 17, 2011, through counsel, and sought "specifically identified records from January 1, 2009 to May 17, 2011." (Complaint, ¶ 25.) Patriot alleged that ODNR provided records in response but that the production was incomplete. Patriot asserted that it later, on April 10, 2012, became aware during the deposition of a retired ODNR official, John Husted, that at least one additional record responsive to their public records request existed but had not been provided to it. That record was an e-mail written by Husted dated July 21, 2009. Patriot asserted in its complaint that timely disclosure of the Husted e-mail in response to its public records request would have prevented or limited Patriot's involvement in subsequent litigation and would also have prevented a three-month cessation of Patriot's business activities.

{¶ 9} Patriot's complaint also alleged that, on April 19 and May 1, 2012, ODNR delivered to Patriot additional records dated during or after April 2010. It alleged that "upon Patriot's information and belief, ODNR has concealed and/or destroyed public documents that are both responsive to the May 17 Request and inculpatory evidence against ODNR." (Complaint, ¶ 42.) It alleged that "ODNR willfully concealed, interfered with and/or destroyed relevant public records, with knowledge of pending and probable litigation * * * [and] was designed to disrupt Patriot's legal cases." (Complaint, ¶ 59.) That litigation included a declaratory judgment action filed in the Trumbull County Court of Common Pleas and appeals to the Ohio Environmental Review Appeals Commission ("ERAC"), of the modified permits issued to Patriot and the city of Warren. Patriot asserted that, on July 3, 2012, ERAC issued its decision, which allowed Patriot to resume its former operations at its facility. It alleged that the common pleas court dismissed the declaratory judgment action on March 30, 2012.

{¶ 10} Patriot further alleged that, "[w]ithout the records concealed, interfered with and/or destroyed by ODNR, Patriot's litigation options were substantially disrupted, which directly or proximately resulted in damages to Patriot." (Complaint, ¶ 61.)

{¶ 11} In response to the complaint, ODNR filed a motion to dismiss Patriot's complaint pursuant to Civ.R. 12(B)(1) and (6).  It asserted that Patriot's spoliation claim rested on a single document—Husted's July 21, 2009 e-mail—and that the document could not, as a matter of law, have disrupted Patriot's litigation before the ERAC or the Trumbull County Court of Common Pleas.  It argued that Patriot had, therefore, failed to state a claim of spoliation. It additionally asserted that the Court of Claims lacks subject-matter jurisdiction over claims based on Ohio's public records statute, and that Count II should therefore be dismissed.  Patriot did not provide evidentiary materials with its Civ.R. 12(B)(6) motion.

{¶ 12}  In its decision, the Court of Claims concluded that Patriot had failed to state a claim of spoliation in Count I of the complaint.  It  reasoned that Patriot became aware of the Husted e-mail prior to the conclusion of the ERAC appeal and that, therefore, pursuant to *Davis v. Wal-Mart Stores, Inc.*, 93 Ohio St.3d 488 (2001), Patriot should have pursued its claim that evidence had been spoliated during the pendency of the ERAC proceedings. The court further agreed with ODNR that the Court of Claims lacked jurisdiction to consider the public records claims asserted in Count II of the complaint.

{¶ 13} Patriot timely appealed the judgment of the Court of Claims, and the case is now before us for disposition.

## II. Legal Analysis

### A. *Spoliation Claim—Civ.R. 12(B)(6)*

{¶ 14} We begin our analysis by recounting the framework by which we review a trial court's ruling on a motion to dismiss for failure to state a claim:

> A motion to dismiss under Civ.R. 12(B)(6) for failure to state a claim is procedural and tests the sufficiency of the complaint. * * * Dismissal for failure to state a claim upon which relief can be granted is proper if, after all factual allegations are presumed to be true and all reasonable inferences are made in favor of the non-moving party, it appears beyond doubt from the complaint that the plaintiff could prove no set of facts warranting the requested relief. * * * A court of appeals

reviews the dismissal of a complaint pursuant to Civ.R. 12(B)(6) under a de novo standard.

(Citations omitted.) *Modern Office Methods, Inc. v. Ohio State Univ.*, 10th Dist. No. 11AP-1012, 2012-Ohio-3587, ¶ 9.

{¶ 15} Moreover, " 'whether a complaint states a claim upon which relief can be granted is not dependent upon whether potential defenses are available.' * * * Rather, '[a]s long as there is a set of facts consistent with the complaint that would allow the plaintiff to recover, dismissal under Civ.R. 12(B)(6) is not proper.' " *Columbus Green Bldg. Forum v. State*, 10th Dist. No. 12AP-66, 2012-Ohio-4244, ¶ 28, quoting *Jones v. Goodyear Tire & Rubber Co.*, 9th Dist. No. 21724, 2004-Ohio-2821, ¶ 12.

{¶ 16} Ohio is one of a minority of states that recognizes spoliation of evidence as a tort. *Davis* (Cook, J., dissenting). Recovery on a spoliation claim in Ohio is dependent upon proof of all of the following elements: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." *Smith v. Howard Johnson Co., Inc.*, 67 Ohio St.3d 28, 29 (1993).

{¶ 17} Accordingly, we review Patriot's complaint as to the spoliation claim to determine whether Patriot alleged facts that would, if proven true, satisfy the five *Smith* elements of spoliation. We conclude that it did.

{¶ 18} Patriot clearly alleged the first and second *Smith* elements; i.e., that pending or probable litigation involving Patriot existed and that ODNR had knowledge of the existence or probability of that litigation. Moreover, Patriot pled the third element of the cause of action by alleging that "ODNR willfully concealed, interfered with *and/or destroyed relevant public records* * * * [and] such * * * destruction of * * * public records was designed to disrupt Patriot's legal cases." (Emphasis added.) (Complaint, ¶ 59.) In addition, Patriot alleged that, without those records, "Patriot's litigation options were substantially disrupted," which "directly or proximately resulted in damages to Patriot." (Complaint ¶ 61.) Patriot thus pled the fourth and fifth elements of the tort of spoliation as established in *Smith.*

{¶ 19} Patriot further stated specific facts, rather than mere unsupported conclusions, that would, when presumed to be true and in light of reasonable inferences in Patriot's favor, state a claim in spoliation. It alleged the existence of at least one specific document that ODNR had failed to disclose in response to Patriot's public records request—the Husted e-mail. *Compare, White v. Equity, Inc.,* 191 Ohio App.3d 141, 2010-Ohio-4743 (10th Dist.) (reversing a Civ.R. 12(B)(6) dismissal of a spoliation claim where plaintiff asserted that, "on information and belief," the defendants willfully redacted an original document, copied it, and then destroyed the original). Patriot argues that only through discovery will it be able to determine the full scope of ODNR's actions relative to the disposition of other e-mails and public records, including possible destruction of them. We agree.

{¶ 20} In granting ODNR's motion to dismiss, the Court of Claims cited *Davis*. In that case, the Supreme Court of Ohio stated that "claims for spoliation of evidence may be brought after the primary action has been concluded only when evidence of spoliation is not discovered until after the conclusion of the primary action." *Davis* at 491. The Court of Claims concluded that the allegations in Patriot's complaint established that Patriot became aware of the Husted e-mail during the pendency of litigation at ERAC. It deemed the ERAC appeal to be the "primary action" for purposes of *Davis* and concluded that Patriot could not, therefore, assert a tort claim of spoliation after the conclusion of the ERAC administrative appeals.

{¶ 21} *Davis* involved an employer intentional tort wrongful-death action. The plaintiff, the worker's widow, asserted that she had discovered during post-trial proceedings that the employer, Wal-Mart, had withheld evidence and documents during the course of the litigation. She claimed that, had she been aware of the evidence, she would not have dismissed a survivor claim seeking additional compensatory and punitive damages.

{¶ 22} The plaintiff in *Davis* asserted her spoliation claim in a separate and new action. Wal-Mart argued that the spoliation claim was barred by res judicata in that the wrongful-death action had already concluded. Wal-Mart sought to establish a legal proposition that "[c]laims for spoliation of evidence should be brought at the same time as, or as an amendment to, the primary action." *Id.* at 491.

{¶ 23} The Supreme Court of Ohio rejected Wal-Mart's arguments. It stated in its syllabus the premise upon which the Court of Claims relied in the case now before us, i.e., that spoliation claims may be brought "after the primary action has been concluded only when evidence of spoliation is not discovered until after the conclusion of the primary action." *Id.*

{¶ 24} In her dissent, Justice Cook observed that the majority opinion had not explained "*when* a 'primary action' 'concludes' for purposes of its syllabus and/or res judicata." (Emphasis sic.) *Id.* at 494. She warned that "[b]ecause the majority opinion never actually applies the syllabus to the specific evidence alleged to have been spoliated in this case, the spoliation tort will remain as unexplained to the bench and bar as it was after its cursory recognition in *Smith. Id.*

{¶ 25} Construing *Davis* in view of the facts then before the Supreme Court, we conclude that *Davis* supports the premise that, if spoliation is discovered after an action between the same parties has concluded, res judicata does not bar a subsequent claim against an alleged spoliation tortfeasor. But in the case before us, the disposition of the ERAC appeals could not constitute a res judicata bar of a spoliation claim, regardless of the time at which the spoliation was discovered, as ERAC lacks subject-matter jurisdiction to adjudicate tort claims against the state, and a spoliation claim therefore could not have been adjudicated by ERAC. See R.C. 3745.04(B) establishing that ERAC has "exclusive original jurisdiction over any matter that may, under this section, be brought before it.") Patriot could not, therefore, have successfully asserted a spoliation claim in the ERAC proceedings.

{¶ 26} It is true that common pleas courts have subject-matter jurisdiction over claims asserting the tort of spoliation and that Patriot acknowledged in its complaint that an action in which both Patriot and ODNR were parties was pending in a common pleas court at the time Patriot became aware of ODNR's failure to produce the Husted e-mail. However, had Patriot attempted to amend its complaint to include the spoliation claim in the pending Trumbull County Court of Common Pleas declaratory judgment action, that claim would have been subject to summary dismissal based on its nature as a tort claim for monetary damages that could only be tried in the Court of Claims. See R.C. 2743.02

(Court of Claims has exclusive, original jurisdiction over civil suits for money damages brought against the state); *see also Columbus Green Bldg. Forum*, at ¶ 15-16.

{¶ 27} In short, we conclude that *Davis*, in contrast to the case before us, concerned a case in which the application of res judicata was at issue. Res judicata does not appear to be relevant in the case before us. We therefore find that *Davis* does not apply in this case, as the doctrine of res judicata is not implicated. *Accord Tate v. Adena Regional Med. Ctr.*, 155 Ohio App.3d 524, 2003-Ohio-7042 (4th Dist.), ¶ 26 (observing that "the issue in *Davis* was whether a spoliation claim was barred by the doctrine of res judicata" and that "the spoliation claim itself was not at issue"); *Monroe v. Forum Health*, 11th Dist. No. 2012-T-0026, 2012-Ohio-6133.

{¶ 28} Accordingly, we find that the trial court erred in granting ODNR's motion to dismiss the spoliation claim in reliance on *Davis.* We therefore sustain Patriot's first assignment of error.

## B. *Public Records Claim—Civ.R. 12(B)(1) (Lack of Subject-Matter Jurisdiction)*

{¶ 29} "Civ.R. 12(B)(1) permits dismissal where the trial court lacks jurisdiction over the subject matter of the litigation. The standard of review for a dismissal pursuant to Civ.R. 12(B)(1) is whether any cause of action cognizable by the forum has been raised in the complaint. * * * We review an appeal of a dismissal for lack of subject-matter jurisdiction under Civ.R. 12(B)(1) de novo." (Citation omitted.) *PNC Bank, Natl. Assn. v. Botts,* 10th Dist. No. 12AP-256, 2012-Ohio-5383, ¶ 21.

{¶ 30} In reviewing de novo ODNR's motion to dismiss Count II, we are cognizant that "[t]he Court of Claims is a court of limited jurisdiction." *Windsor House, Inc. v. Ohio Dept. of Job and Family Servs.,* 10th Dist. No. 11AP-367, 2011-Ohio-6459, ¶ 15. *Modern Office Methods, Inc.,* ¶ 10. It has exclusive, original jurisdiction over civil suits for money damages brought against the state as a result of the waiver of immunity reflected in R.C. 2743.02. *Columbus Green Bldg. Forum* at ¶ 15-16. Not every claim seeking monetary relief, however, is a claim for money damages. *Id. at* ¶ 18.

{¶ 31} In this appeal, the parties have focused on the allegations in Count II of Patriot's complaint relative to its Ohio's record retention statute, R.C. 149.351, rather than

Ohio's public records statute, R.C. 149.43.  The record retention statute provides in part as follows:

> All records are the property of the public office concerned and *shall not be* removed, destroyed, mutilated, transferred, or otherwise *damaged or disposed of, in whole or in part, except as provided by law* * * *  Those records shall be delivered by outgoing officials and employees to their successors and shall not be otherwise removed, destroyed, mutilated, or transferred unlawfully.

(Emphasis added.)  R.C. 149.351(A).

{¶ 32} Accordingly, public servants may only destroy public records "as provided by law."   Pursuant to R.C. 149.351, a public office may "dispos[e] of items, including transient and other documents (e.g., e-mail messages) that are no longer of administrative value and are not otherwise required to be kept, in accordance with the office's properly adopted policy for records retention and disposal." *State ex rel. Glasgow v. Jones*, 119 Ohio St.3d 391, 2008-Ohio-4788, ¶ 21, fn. 1.  R.C. 149.331 provides that the state records program of the department of administrative services has the authority to approve retention schedules submitted to it by state agencies. R.C. 149.333 provides that state agencies must submit proposed records retention schedule to the state records program under the director of administrative services for approval, rejection, or modification).  Ohio law, thus, permits a public servant to dispose of public records in accord with a valid retention schedule.

{¶ 33} R.C. 149.351(B) expressly provides a specific statutory remedy for violation of the obligation imposed by R.C. 149.351(A) and also specifies the court in which that remedy may be pursued.  That court is *not* the Court of Claims:

> *Any person who is aggrieved* by the removal, destruction, mutilation, or transfer of, or by other damage to or disposition of a record in violation of division (A) of this section, or by threat of such removal, destruction, mutilation, transfer, or other damage to or disposition of such a record, *may commence* either or both of the following *in the court of common pleas of the county in which division (A) of this section allegedly was violated* or is threatened to be violated:
>
> (1) *A civil action for injunctive relief* to compel compliance with division (A) of this section, and to obtain an award of the

> *reasonable attorney's fees* incurred by the person in the civil action;
>
> (2) A civil action to recover *a forfeiture in the amount of one thousand dollars for each violation,* but not to exceed a cumulative total of ten thousand dollars, regardless of the number of violations, and to obtain an award of the reasonable *attorney's fees* incurred by the person in the civil action not to exceed the forfeiture amount recovered.

(Emphasis added.)  R.C. 149.351(B).

{¶ 34} Accordingly, a claim based on an alleged violation of R.C. 149.351(A) and seeking the statutorily authorized remedy of injunctive relief,  a "forfeiture" in the amount of $1,000 per violation, or attorney's fees, may *only* be brought in "the court of common pleas of the county in which division (A) of this section allegedly was violated or is threatened to be violated."

{¶ 35} Patriot observes that the Court of Claims has exclusive jurisdiction over civil actions against the state for monetary damages pursuant to R.C. 2743.03(A)(1). But that statute is general in nature while R.C. 149.351 is a specific statute governing claims for violations of the public records retention statute.  As such, R.C. 149.351 prevails over the general provision in the Court of Claims Act cited by Patriot. *Compare State Fraternal Order of Police Grand Lodge Number 1 v. State*, 10th Dist. No. 80AP-744 (Dec. 31, 1981), citing *State ex rel. Myers v. Chiaramonte*, 46 Ohio St.2d 230 (1976) (status of state highway patrol officers governed by R.C. 5503.03 because the specific legislation provided in R.C. Chapter 5503 controls over the general civil service provisions of R.C. Chapter 124).  Moreover, Patriot has provided no authority to support the proposition that it may assert a claim for "monetary damages" beyond the statutory monetary recovery authorized by R.C. 149.351(B), i.e., reasonable attorney's fees and a forfeiture penalty in the amount of $1,000 per violation.  A recovery of the forfeiture penalty authorized by R.C. 149.351(B) does not constitute "monetary damages," as that term is used to describe the exclusive original jurisdiction of the Court of Claims.

{¶ 36} Similarly, the public records statute, as opposed to the public records retention statute, expressly provides that  a person who believes he or she was aggrieved by the failure of a public office to comply with its obligation to promptly produce requested public records, may "commence *a mandamus actio*n to obtain a judgment that

orders the public office * * * to comply with [R.C. 149.43(B)], that awards court costs and reasonable attorney's fees * * * and, if applicable, * * * statutory damages under [R.C. 149.43(C)(1)]." (Emphasis added.) R.C. 149.43(C)(1). A mandamus action filed by such an individual may be commenced in one of only three courts: "the court of common pleas of the county in which division (B) of this section allegedly was not complied with, in the supreme court pursuant to its original jurisdiction under Section 2 of Article IV, Ohio Constitution, or in the court of appeals for the appellate district in which division (B) of this section allegedly was not complied with pursuant to its original jurisdiction under Section 3 of Article IV, Ohio Constitution." R.C. 149.43(C)(1). Accordingly, the Court of Claims did not have subject-matter jurisdiction over any claims asserted by Patriot to the extent its complaint is construed as asserting violations of R.C. 149.43.

{¶ 37} The Court of Claims therefore did not err in sustaining ODNR's Civ.R. 12(B)(1) motion to dismiss Count II of Patriot's complaint for lack of subject-matter jurisdiction. Accordingly, we overrule Patriot's second assignment of error.

## III. Conclusion

{¶ 38} For the foregoing reasons, we sustain Patriot's first assignment of error, and overrule its second assignment of error. The judgment of the Court of Claims is affirmed in part and reversed in part, and this case is remanded to that court for further proceedings to adjudicate Count I of Patriot's complaint.

*Judgment affirmed in part, reversed in part,*
*and cause remanded with instructions.*

TYACK and CONNOR, JJ., concur.

_____