[Cite as *Martin v. Giant Eagle, Inc.*, 2014-Ohio-2657.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Donald Martin, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 13AP-809 |
| v. | : | (C.P.C. No. 11CVC-14861) |
| Giant Eagle, Inc., | : | (ACCELERATED CALENDAR) |
| Defendant-Appellee. | : | |

---

## D E C I S I O N

### Rendered on June 19, 2014

---

*Blumenstiel, Evans, Falvo & Blumenstiel, LLC*, and *James B. Blumenstiel*, for appellant.

*Williams, Moliterno & Scully Co., L.P.A.*, and *Roger H. Williams*, for appellee.

---

APPEAL from the Franklin County Court of Common Pleas

SADLER, P.J.

{¶ 1} Plaintiff-appellant, Donald Martin, appeals from the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Giant Eagle, Inc. For the following reasons, we affirm the judgment of the trial court.

## I. BACKGROUND

{¶ 2} Appellant filed a complaint in the court of common pleas seeking damages for injuries he suffered as the result of the alleged negligent acts of appellee. According to the complaint, appellant entered a Giant Eagle shopping center "where the customer carts were kept" and slipped and fell on a "large collection of water." (Complaint, 1.) The

complaint alleges appellee failed to properly inspect and maintain the floor in a safe condition, failed to warn the patrons of the presence of water, and failed to place mats sufficient to "secure the footing" of patrons in the area. (Complaint, 2.) Appellee filed an answer denying the allegations of negligence.

{¶ 3} Appellee filed for summary judgment and argued that tracked in water or snow near the entrance of a building constitutes an open and obvious condition for which liability does not attach. In support of their motion, appellee filed the depositions of appellant and appellant's brother, Craig Martin ("C. Martin"). According to appellant's deposition testimony, on November 24, 2010, Thanksgiving eve, appellant and C. Martin arrived at a Giant Eagle shopping center between the hours of five and six in the evening. Appellant testified that he had been shopping at this particular store for the last four or five years. Appellant described the weather conditions that day as "rain turning to snow, so it was just—it was icy rain," and "when we got to the store, there was—the snowflakes on the windshield * * * there was a freezy rain." (Depo. of Donald Martin, 59-60.) Due to the weather conditions, appellant stated he was required to use his windshield wipers while driving to the store.

{¶ 4} According to appellant, the "freezy rain" continued as he walked into the store. (Depo. Of Donald Martin, 60.) He testified that he entered the store following behind six to eight people, while a "lot of people" exited the store through the same doors. (Depo. of Donald Martin, 67.) Appellant testified that, as he entered the store, he stepped onto a permanent carpet near the entrance, but, as he took his first step towards the carts onto the tile, his "foot just went out from underneath [him]." (Depo. of Donald Martin, 67.) When presented with "Plaintiff's Exhibit E," a photograph depicting the area where he fell, appellant testified that a "stick figure" drawing on the exhibit accurately reflected where he fell. Exhibit E demonstrates appellant fell within a few feet of the store's entryway. Appellant testified it was not until after falling that he was aware of the water and snow near the entrance to the store. When asked the origin of the water and snow, appellant stated "the people that were coming into the entrance were dragging the water and snow in." (Depo. of Donald Martin, 72.) According to appellant, there were no mats, wet floor signs or blowers on the tiled area near the entrance.

{¶ 5} C. Martin testified that he accompanied appellant to Giant Eagle. C. Martin stated "[i]t was a rainy day, rain mixed with snow." (Depo. of C. Martin, 5.) According to C. Martin, he did not observe appellant fall but observed, after the fact, that the floor upon which appellant fell was wet. C. Martin stated that the source of the water was from other patrons who had tracked it in as they entered Giant Eagle.

{¶ 6} Appellant filed a memoranda contra appellee's motion for summary judgment arguing genuine issues of material fact exist regarding whether the tracked in water was an open and obvious hazard, whether appellee possessed superior knowledge of the inclement weather conditions, and whether appellee destroyed an incident report allegedly created by a Giant Eagle employee. In support of his memorandum contra, appellant filed his own affidavit, the depositions of Giant Eagle employees, James MacDonald, Michael Weigand, Kristy Anderson, and David McLaughlin, as well as the deposition of Jennifer Rounds, a witness to the incident. In appellant's affidavit, he stated "there were probably as many as 15 to 20 people walking into the same door as I was," and an equivalent number was exiting through the same door. (Affidavit of Donald Martin, ¶ 9.) According to appellant, "[t]here was a lot of confusion and bumping of people and you could not see the floor due to the congestion." (Affidavit of Donald Martin, ¶ 9.) Appellant stated "[a]s I crossed the carpeted area near the entrance, I took no more than a step or two on the tile floor when my feet shot out from underneath me and I landed on my left shoulder and arm." (Affidavit of Donald Martin, ¶ 10.)

{¶ 7} James MacDonald worked as a center store group leader at Giant Eagle. According to MacDonald, the store was busy that day. MacDonald testified that it is Giant Eagle policy to be alert for hazards caused by inclement weather year round. According to MacDonald, all Giant Eagle employees are responsible for examining the floors near the entrance for potential safety hazards, including wet floors due to inclement weather conditions. MacDonald testified that the primary responsibility of inspecting the front entrances belonged to a staff member named "Kristy." (Depo. of James MacDonald, 11.) MacDonald stated that, if the floors become wet during inclement weather, blowers, temporary mats, and wet floor signs are available for utilization by Giant Eagle. MacDonald stated there are no guidelines on "how bad it's got to get before you put the mats down." (Depo. of James MacDonald, 47.)

{¶ 8} Michael Weigand testified that he worked as a front end coordinator for Giant Eagle. Weigand stated that Thanksgiving eve is one of the busiest days of the year. When questioned on Giant Eagle's safety policies, Weigand stated that it was the responsibility of all employees to keep "hazardous slip and fall conditions out of the store environment." (Depo. of Michael Weigand, 23.) According to Weigand, Kristy Anderson was his direct supervisor and was primarily responsible for inspecting the front lobby. Weigand testified he was one of the first employees to respond to appellant's fall and, while examining appellant, observed "a little bit of water" on the floor. (Depo. of Michael Weigand, 15.) He stated that he did not recall seeing warning signs, temporary mats or blowers in the lobby. According to Weigand, the door appellant entered through was actually an exit door but conceded many customers use it as an entrance.

{¶ 9} According to the testimony of Kristy Anderson, she worked as an assistant front end team leader at Giant Eagle. Anderson stated her responsibilities included "taking care of the front end" and "the cashiers." (Depo. of Kristy Anderson, 8.) Anderson described her responsibility, relative to the "lobby where the carts were stored," in part, as "[m]aking sure that it was free of debris, spills" and to inspect the area every 30 to 60 minutes "to make sure [the area] was being kept up by our cart guys." (Depo. of Kristy Anderson, 10, 11.) Anderson testified that the "cart guys" worked under her supervision and were required to make sure the area was "free of debris, clean, dry, that the carts are there. * * * They'll put up 'Wet Floor' signs. They will get dry mops if it's really bad weather." (Depo. of Kristy Anderson, 11.) She testified the weather that day was "between raining and snowing and had been all afternoon." (Depo. of Kristy Anderson, 12.)

{¶ 10} According to Anderson, she remembers patrolling the front lobby area and testified that, prior to appellant's fall, she did not observe, and was not alerted to, water on the tile floors in the lobby. Anderson admitted that, at the time of appellant's fall, temporary mats, blowers, and warning signs were not in use in the lobby. Anderson testified that she filled out a formal incident report after appellant fell and denoted on the report there was no substance on the floor because, at the time of the incident, she did not observe a substance on the floor. According to Anderson, any wetness on the floor was not "obvious" to her. (Depo. of Kristy Anderson, 31.)

{¶ 11} David McLaughlin worked as a grocery leader for Giant Eagle. McLaughlin stated his primary responsibility was the grocery department, and "Kristy" had the responsibility to inspect the lobby area. (Depo. of David McLaughlin, 8.) McLaughlin agreed that the weather conditions were "somewhere between rain and snow" for most of the afternoon. (Depo. of David McLaughlin, 9.) McLaughlin acknowledged that temporary mats, blowers, and warning signs are available for use in the store but were not in use at the time appellant fell. According to McLaughlin, after appellant's fall, he noticed that "[t]here was moisture that had been tracked in" by carts and customers. (Depo. of David McLaughlin, 13.)

{¶ 12} Jennifer Rounds, a Giant Eagle patron, had finished her shopping and was exiting the store when she observed appellant fall. According to Rounds, as she left the store, she stopped because several people were "coming in the exit, and [appellant] was one of them." (Depo. of Jennifer Rounds, 12.) Rounds stated that, as appellant "came in, he got off the carpeting onto the * * * tile floor, and his feet went out from under him and he hit— * * * —the ground." (Depo. of Jennifer Rounds, 12-13.) Rounds testified she recalled at least three people, including appellant and C. Martin, entering the store and a "few other people were exiting," including her. (Depo. of Jennifer Rounds, 13.) Rounds stated that other patrons entering the store had tracked water onto the floor. Rounds testified "I don't think there were any large puddles, but there were definitely wet footprints. Other people came in and out across the tile." (Depo. of Jennifer Rounds, 21.) According to Rounds, Weigand was "taking all the information down" on an "incident report." (Depo. of Jennifer Rounds, 28-29.)

{¶ 13} In granting summary judgment in favor of appellee, the trial court concluded "reasonable minds could only conclude that there are no outstanding genuine issues of fact in this case that would attach liability to [appellee], and [appellee] is entitled to summary judgment as a matter of law." (July 25, 2013 Decision, 4.) This appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶ 14} Appellant brings the following assignments of error for our review:

> [I.] The Trial Court erred in ruling there were no genuine
> issues of material fact as to attendant circumstances that

contributed to cause Martin's slip and fall with resulting serious injury.

[II.] The Trial Court erred in ruling the store had no duty of care in spite of their superior knowledge they had taken none of their customary precautions to protect their patrons, thereby perpetuating and aggravating the slipping hazard on the tile floor.

[III.] Where the initial incident report stating there was water on the floor was replaced by a report stating there was "no water" on the floor in conflict with all eyewitnesses, the Trial Court erred in ruling there were no genuine issues of material fact regarding spoliation and credibility, which is the exclusive province of the jury.

## III. STANDARD OF REVIEW

{¶ 15} Appellate review of summary judgments is de novo. *Titenok v. Wal-Mart Stores E., Inc.*, 10th Dist. No. 12AP-799, 2013-Ohio-2745, ¶ 6; *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995). Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St. 3d 181 (1997).

{¶ 16} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party, however, cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of a type listed in Civ.R. 56(C), affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421 (1997). Once the moving party discharges its initial burden, summary judgment is appropriate if the non-moving party does not respond, by affidavit or as otherwise

provided in Civ.R. 56, with specific facts showing that a genuine issue of material fact exists for trial. *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

## IV. DISCUSSION

### A. First Assignment of Error

{¶ 17} In appellant's first assignment of error, he argues there is a genuine issue of material fact as to whether attendant circumstances contributed to his slip and fall such that the condition of the floor could not constitute an open and obvious hazard. Specifically, appellant claims that pedestrian traffic constituted an attendant circumstance which prevented him from looking down and observing the wet lobby floor.

{¶ 18} Before reaching the merits of appellant's argument, we first address appellant's proposition that the open and obvious nature of a hazard and the existence of attendant circumstances are questions of fact for a jury alone to decide. We previously addressed this issue in *Haller v. Meijer, Inc.*, 10th Dist. No. 11AP-290, 2012-Ohio-670. In *Haller*, we noted that "this court has reached differing conclusions about whether the open and obvious nature of a hazard and the existence of attendant circumstances is a question of law or a question of fact." *Id.* at ¶ 11. We went on to conclude, however, that it is appropriate to decide the open and obvious nature of a hazard, as well the existence of attendant circumstances, as a matter of law, provided there are no genuine issues of material fact. *Id.* at ¶ 16. Thus, consistent with *Haller*, the open and obvious nature of a hazard and the determination of attendant circumstances may be decided as a matter of law.

{¶ 19} We next address appellant's argument that appellee's negligence caused him to slip and fall in the lobby of Giant Eagle. "[T]o establish actionable negligence, one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom." *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285 (1981). The parties agree both that appellant was a business invitee of appellee and that store owners owe business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203 (1985).

{¶ 20} Generally, " '[t]he open-and-obvious doctrine provides that premises owners do not owe a duty to persons entering those premises regarding dangers that are

open and obvious.' " *Pesci v. Miller*, 10th Dist. No. 10AP-800, 2011-Ohio-6290, ¶ 13, quoting *Hill v. W. Res. Catering, Ltd.*, 8th Dist. No. 93930, 2010-Ohio-2896, ¶ 9. "The rationale underlying this doctrine 'is "that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." ' " *Id.*, quoting *W. Res. Catering* at ¶ 9, quoting *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644 (1992). "When applicable, 'the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims. * * * It is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff.' " *Pesci* at ¶ 13, quoting *W. Res. Catering* at ¶ 10.

{¶ 21} In general, "[o]pen-and-obvious dangers are those not hidden, concealed from view, or undiscoverable upon ordinary inspection." *Thompson v. Ohio State Univ. Physicians, Inc.*, 10th Dist. No. 10AP-612, 2011-Ohio-2270, ¶ 12. However, an individual "does not need to observe the dangerous condition for it to be an 'open-and-obvious' condition under the law; rather, the determinative issue is whether the condition is observable." *Id.* at ¶ 10. Thus, "[e]ven in cases where the plaintiff did not actually notice the condition until after he or she fell, this court has found no duty where the plaintiff could have seen the condition if he or she had looked." *Id.*

{¶ 22} This court, as well as various "Ohio courts[,] have held that tracked in water or snow near the entrance of a building constitutes an open and obvious condition for which liability does not attach." *Pesci* at ¶ 16; *see Blair v. Vandalia United Methodist Church*, 2d Dist. No. 24082, 2011-Ohio-873, ¶ 43 (defendant had no duty to warn of an area just inside the entrance that became wet due to tracked in water because the water was an open and obvious condition); *Towns v. WEA Midway, LLC*, 9th Dist. No. 06CA009013, 2007-Ohio-5121, ¶ 14 ("appellant knew it had been raining when she entered the mall and presumptively knew as a result of the rain that the floor might be wet and slippery"); *Lupica v. Kroger Co.*, 3d Dist. No. 9-91-48 (May 29, 1992) (tracked in water near the store's entrance which causes a patron to slip "will not give rise to a cause of action against the owner or lessee of the store").

{¶ 23} Tracked in water "is a condition created by inclement weather and everyone should be aware of the conditions." *Boston v. A & B Sales, Inc.*, 7th Dist. No. 11 BE 2, 2011-Ohio-6427, ¶ 41, citing *Boles v. Montgomery Ward & Co.*, 153 Ohio St. 381 (1950). "The Supreme Court of Ohio has held that, '[o]rdinarily, no liability attaches to a store owner or operator for injury to a patron who slips and falls on the store floor which has become wet and slippery by reason of water and slush tracked in from the outside by other patrons.' " *Pesci* at ¶ 15, quoting *Boles* at paragraph two of the syllabus. "Everybody knows that the hallways between the outside doors of * * * buildings and the elevators or business counters inside the building during a continued rainstorm are tracked all over by the wet feet of people coming from the wet sidewalks, and are thereby rendered more slippery than they otherwise would be." *S.S. Kresge Co. v. Fader*, 116 Ohio St. 718, 723-24. "[I]n light of weather conditions, plaintiff 'should have been aware or anticipated the presence of water on the floor inside the mall because on a rainy day, one can expect to find water on the floor in such heavily trafficked areas.' " *Id.*, quoting *Johnson v. Serv. Ctr. Invest. Trust*, 8th Dist. No. 75256 (Dec. 2, 1999). "[S]tore owners have no duty to protect its patrons from tracked-in water from snow or rain near the entrance to the stores." *Middleton v. Meijer, Inc.*, 2d Dist. No. 23789, 2010-Ohio-3244, ¶ 17.

{¶ 24} Here, it is uncontested both that appellant was aware of the inclement weather conditions prior to entering the store and that appellant slipped and fell on water that had been tracked into Giant Eagle by other patrons. We find the analysis in *Pesci* to be instructive.

{¶ 25} This court was faced with a similar circumstance in *Pesci*, wherein the plaintiff slipped and fell on tracked in water in the entryway of her place of employment. Despite the plaintiff's failure to observe the tracked in water before she fell, we held that "tracked in water or snow near the entrance of a building constitutes an open and obvious condition for which liability does not attach." *Id.* at ¶ 16. We reasoned, "in light of weather conditions, plaintiff should have been aware or anticipated the presence of water on the floor * * * because on a rainy day, one can expect to find water on the floor in such heavily trafficked areas." *Id.* (internal citations omitted). As in *Pesci*, appellant was aware of the inclement weather conditions involving snow and rain and should have anticipated

water in the Giant Eagle entrance.  Accordingly, we find the water in the entrance of Giant Eagle to have been an open and obvious hazard.

{¶ 26}  Appellant argues the tracked in water rule should not bar him from recovery because attendant circumstances prevented him from discovering that the floors were wet.  "An attendant circumstance is any significant distraction that would divert the attention of a reasonable person in the same situation and thereby reduce the amount of care an ordinary person would exercise to avoid an otherwise open and obvious hazard." *Haller* at ¶ 10.  "In order to be considered an exception to the open-and-obvious doctrine, 'an attendant circumstance must be "so abnormal that it unreasonably increased the normal risk of a harmful result or reduced the degree of care an ordinary person would exercise." ' "  *Ratcliff v. Wyandotte Athletic Club, LLC*, 10th Dist. No. 11AP-692, 2012-Ohio-1813, ¶ 20, quoting *Mayle v. Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-541, 2010-Ohio-2774, ¶ 20, quoting *Cummin v. Image Mart, Inc.*, 10th Dist No. 03AP-1284, 2004-Ohio-2840, ¶ 10.  "[A]ttendant circumstances are facts that significantly enhance the danger of the hazard." *Haller* at ¶ 10.  Furthermore, the attendant circumstance must be an " 'unusual circumstance of the property owner's making.' "  *Id.*, quoting *McConnell v. Margello*, 10th Dist. No. 06AP-1235, 2007-Ohio-4860, ¶ 17.  "Attendant circumstances do not, though, include regularly encountered, ordinary, or common circumstances." *Colville v. Meijer Stores Ltd. Partnership*, 2d Dist. No. 2011-CA-011, 2012-Ohio-2413, ¶ 30, citing *Cooper v. Meijer*, 10th Dist No. 07AP-201, 2007-Ohio-6086, ¶ 17.

{¶ 27}  The record does not support appellant's argument that the pedestrian traffic he encountered constituted an attendant circumstance.  Appellant testified when he entered Giant Eagle, he encountered anywhere between 6 and 15 people entering and exiting through the same door.  The record established that Thanksgiving eve is typically one of the busiest shopping days of the year.  However, the record fails to demonstrate that the pedestrian traffic present at the time of appellant's fall was either unexpected or a condition created by Giant Eagle.  Even when viewing this evidence in a light most favorable to appellant, we are not able to find the alleged attendant circumstances so abnormal that they unreasonably increased the normal risk of a harmful result or reduced the degree of care an ordinary person would exercise. *Ratcliff*; *Seifert v. Great N. Shopping Ctr.*, 8th Dist. No. 74439 (Nov. 5, 1998) (crowded parking lot and heavy traffic

in store parking lot on the afternoon of Good Friday not an attendant circumstance to cause a trivial defect to become substantial).

{¶ 28} Construing the evidence in a light most favorable to appellant, reasonable minds could only conclude that appellant has failed to demonstrate a genuine issue of material fact exists that attendant circumstances distracted appellant from appreciating the open and obvious hazard of tracked in water on the floor in the Giant Eagle entrance.

{¶ 29} Accordingly appellant's first assignment of error is overruled.

### B.  Second Assignment of Error

{¶ 30} In appellant's second assignment of error, he argues "[t]he Trial Court erred in ruling the store had no duty of care in spite of their superior knowledge" that "it was raining and snowing outside."  (Appellant's brief, 20, 21.) Moreover, appellant claims appellee's internal safety polices created a duty of care towards its patrons during inclement weather conditions and that failure to engage in these safety policies perpetrated and aggravated the slipping hazard on the floor.

{¶ 31} We have previously held that "[a] violation of an internal policy does not establish the standard of care." *Marsh v. Heartland Behavioral Health Ctr.*, 10th Dist. No. 09AP-630, 2010-Ohio-1380, ¶ 35; *Baus v. Lowe*, 8th Dist. No. 87765, 2007-Ohio-275, ¶ 22-23.  As such, appellee's safety policy requiring employees to examine the floors near the entrance during inclement weather for potential safety hazards did not create a legal duty of care on behalf of appellee to protect against an open and obvious condition. *See King v. E. Worthington Village*, 10th Dist. No. 13AP-324, 2013-Ohio-4160, ¶ 18.  Nor does a failure to comply with such a policy establish superior knowledge of a slippery condition on the floor entrance caused by tracked in water.  We find the record devoid of any evidence demonstrating that appellee possessed knowledge superior to that of appellant of either the inclement weather conditions or the condition of the lobby floor with regard to the tracked in water.

{¶ 32} Accordingly, appellant's second assignment of error is overruled.

### C.  Third Assignment of Error

{¶ 33} In appellant's third assignment of error, he asserts the trial court erred in granting summary judgment on his spoliation claim. Specifically, appellant claims

Weigand's "initial report [has] disappeared" creating a genuine issue of material fact. (Appellant's brief, 10.)

{¶ 34} "Recovery on a spoliation claim in Ohio is dependent upon proof of all of the following elements: '(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." *Patriot Water Treatment, LLC v. Ohio Dept. of Natural Resources*, 10th Dist. No. 13AP-370, 2013-Ohio-5398, ¶ 16. "In order to establish a spoliation claim, a plaintiff is required to show that a defendant 'willfully destroyed, altered or concealed evidence.' " *Marok v. Ohio State Univ.*, 10th Dist No. 13AP-12, 2014-Ohio-1184, ¶ 36, quoting *Drawl v. Cornicelli*, 124 Ohio App.3d 562, 567 (11th Dist.1997). "Ohio does not recognize a cause of action for negligent spoliation of evidence." *Id.*

{¶ 35} Appellant bases his spoliation claim solely on the testimony of Rounds who testified that Weigand was "taking all the information down" on an "incident report." (Depo. of Jennifer Rounds, 28-29.) On this issue, Weigand specifically testified that he did not create an incident report, and Anderson testified that, as the manager, she created the only formal incident report. Despite these different assertions, Rounds' testimony alone fails to allege specific facts on each required element of spoliation. The record does not demonstrate willful destruction of an incident report, nor whether the alleged destruction was done with the design to disrupt appellant's case. Viewing the evidence in a light most favorable to appellant, we find no genuine issue of material fact exists as to the claim of spoliation.

{¶ 36} Appellant also argues in his third assignment of error that the testimonies of Weigand and Anderson create a genuine issue of material fact as to whether the tracked in water was open and obvious. According to appellant, Anderson's testimony that she did not observe water on the floor and Weigand's testimony that he did observe water on the floor creates a genuine issue of material fact. We find our disposition of appellant's first assignment of error dispositive of this argument. Applying *S.S. Kresge Co.* and *Pesci*, we previously determined that, because the source of the water here was indisputably tracked in, appellant should have anticipated the presence of tracked in water on the floor and is

charged with knowledge that the floor might be wet.  Accordingly, construing the evidence in a light most favorable to appellant, the testimonies of Weigand and Anderson do not create a genuine issue of material fact on the issue of whether the water was an open and obvious hazard.

{¶ 37} Accordingly, appellant's third assignment of error is overruled.

{¶ 38} Having construed the evidence in a light most favorable to appellant on each issue presented for review, we find appellant has failed to demonstrate genuine issues of material fact exist and that appellee is entitled to judgment as a matter of law. Accordingly, the trial court properly granted summary judgment in favor of appellee.

## V.  CONCLUSION

{¶ 39} Having overruled appellant's first, second, and third assignments of error, the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

BROWN, J., concurs.
TYACK, J., dissents.

TYACK, J., dissenting.

{¶40}  I simply do not agree that no material facts were in serious dispute before the trial court.  Therefore, I do not believe summary judgment was appropriate.

{¶41}  Donald Martin fell on the evening before Thanksgiving Day in 2010.  As might be expected, the Giant Eagle where he routinely shopped and where he fell was busy with all the last minute shoppers one would anticipate at that date and time.

{¶42}  Because it had been raining and snowing that afternoon, apparently shoppers had tracked moisture into the store.  How much moisture had been tracked in and how visible the moisture was are material facts which were genuinely at issue in the trial court and are still genuine issues.

{¶43}  Kristy Anderson, whose duties included supervising the entrance area where the fall occurred, swore under oath that she observed no water in the entrance area. She even generated a report to Giant Eagle that there was no water observable by her in the area.  If the person from Giant Eagle whose job it was to observe the area and who claimed that she had observed the area that afternoon and early evening could swear under oath that no water was observable in that area, I do not see how the trial court

could find summary judgment was appropriate based upon a finding that the moisture on the tile floor was open and obvious. Donald Martin did not see it before he fell. Kristy Anderson never saw it. Whether the moisture was open and obvious was a genuine issue of material fact.

{¶44} Perhaps Anderson and Martin did not see it because of the volume of pedestrian traffic going in and out of the store on a busy holiday eve. In legalese, the hazard was not readily observable due to attendant circumstances. The "why" is not really the critical issue. The critical issue is the fact that the moisture was not readily observable to either the store employee whose job included putting out warning signs, mats, and fans when moisture was an open and obvious hazard in the store, or to a store patron like appellant who was used to such precautions being taken when a danger of falling on moisture was present in the area. Indeed, the utter lack of such safety precautions being taken when that Giant Eagle store had a long history of taking such precautions was more proof that the hazard had not been observed by store personnel—that the hazard was not open and obvious.

{¶45} I believe that the trial court judge was wrong to grant summary judgment, and this court is even more wrong to affirm that judgment.

{¶46} I respectfully dissent.

_____